[Civil No. 4445.   Filed June 14, 1943.]

[138 Pac. (2d) 897.]

QUICK AVIATION COMPANY, a Corporation, Appellant, v. CONRAD J. KLEINMAN, Administrator of the Estate of J. H. MARINE, Also Known as JACK MARINE, Deceased, Substituted for J. H. MARINE, Doing Business as MARINE AIR SERVICE, Appellee.

Messrs. Armstrong, Kramer, Morrison & Roche and Messrs. Rawlins & Rawlins, for Appellant.

Messrs. Clark & Clark, for Appellee.

McALISTER, C. J.—This is an action by the plaintiff, Quick Aviation Company, a corporation, against Conrad J. Kleinman, administrator of the estate of J. H. Marine, deceased, who in his life time did business as the Marine Air Service, asking that defendant and his agents be permanently restrained from transporting by airplane property known as insecticides and germicides used in the treatment of farm products

throughout the State of Arizona and that it have judgment against the defendant for the sum of $2,000 as damages for transporting these articles which he had delivered up to that time.

It appears that on the 4th day of January, 1938, George C. Quick, after a hearing, obtained from the corporation commission a certificate of convenience and necessity, which reads:

" . . . as a common motor carrier for the transportation of, for compensation, freight (known as Insecticides and Germicides) used in the treament of farm products via airplanes throughout the State of Arizona."

Subsequently, on the 9th day of March, 1939, this certificate was transferred to the plaintiff corporation, who has acted and continued to act under the rights and privileges granted it by the certificate.

The president of the company, Mr. Quick, testified that he was a pilot, and that the company owned two planes, four airplane engines, a truck and an automobile.

The plaintiff offered in evidence an application for a certificate of convenience and necessity filed by J. H. Marine on May 17, 1939, later denied by the corporation commission, for the purpose of proving that he did not have a certificate of convenience and necessity for the operation of airplanes in Arizona for compensation. While this was labeled an application for a certificate of convenience and necessity, it was in fact an application for a contract permit. The ruling on the offer was reserved, however, and in the end, we take it, its admission was denied.

The deceased, it appears from the evidence introduced by plaintiff, dusted the farms of five different people located in different sections of the valley in 1939, and the evidence shows that the process of dusting was performed substantially as follows: The insec-

ticide, sulphur and Paris green, was usually purchased by the farmer and delivered to his farm, either by the dealer or himself, or as near it as it was possible for the airplane to have a place to land and take off. At that place, which was two or three miles, more or less, from the farm to be dusted, the plane was loaded with the insecticide. It then took off for the farm to be dusted, and when the supply of material was exhausted the plane returned to the loading station for reloading. In one of the five instances, the case of Allen Belusi, the plane of Marine took the materials from the City of Phoenix and went directly to the farm and dusted it.

All of these parties testified that no part of the price charged was for transporting or hauling the insecticide from the near-by field to the farm to be dusted, but was solely for the dusting.

Mr. Quick, the president of the plaintiff company, testified that the rates for this service were as follows:

"Depending on the distance the material has to be hauled from the loading field to where it is delivered; that is, charges run usually from 2-⅔¢ a pound to 5¢ per pound, depending on the place where it is picked up and where it is delivered to."

He said also that the prevailing price when the material was picked up within two and one-half miles of the field to be dusted, and this he testified was the average distance, was 3 cents a pound—1½ cents for transporting the two and one-half miles to the field and 1½ cents for dusting—and that if he had to fly it from the Phoenix airport to the farm to be dusted, the price varied from 3 cents a pound to 5 cents a pound, according to the closeness of the customer's field. He also stated that he had received no complaints as to services rendered by him and that he took work from everyone that came along, never refusing anybody. He testified, however, that he did remember that he had never picked up, right where it was applied, any material and

sprayed the field and charged only 1½ cents a pound. To the question: "If you were to confine your business to the mere hauling of insecticides and germicides without spraying or dusting at all, would you continue in business for another minute?" he answered, "Well, I can say, I do not know." He said, however, that he took some insecticide to Buckeye on one occasion without dusting and that he contracted with Cottrell & Saylor merely to haul germicide to their place and dump it out and charged them so much a pound for freight. This, however, was not the usual method of doing business.

Under this state of the evidence the trial court came to the conclusion that neither the plaintiff nor defendant were common carriers at any of the times mentioned in the pleadings subject to the regulation of the Corporation Commission of Arizona under existing laws and that it had no jurisdiction to hear and determine the issues raised in the pleadings other than the defendant's plea to jurisdiction; that the certificate of convenience and necessity granted by the commission to George C. Quick, the asserted predecessor in interest of the plaintiff, together with the assignment thereof to plaintiff, as well as any and all other orders of said commission in any wise purporting to give effect to said certificate of public convenience and necessity, were wholly void and without effect for lack of jurisdiction in said commission to grant or issue. And we are of the opinion that under the facts the trial court was justified in its conclusion that neither the plaintiff nor defendant was a common carrier within the purview of the constitution or the statute.

The farmers all testified that under the arrangement with Mr. Marine—and we take it that those farmers whom the plaintiff served had the same arrangement with him or he would not have called the latter as witnesses—no part of the expense of dusting was for hauling or transporting the insecticide from the near-by

field to the farm, but it was all for dusting; while the plaintiff's president testified that 1½ cents of the 3 cents per pound, or whatever the charge, covered the cost of hauling from the landing field to the farm, which, he said, averaged two and one-half miles. The court evidently accepted the statements of the farmers, as was its right. It would seem to us that taking the insecticide from the place of landing, which was sometimes very near the field to be dusted, to that field, and the dusting, was one operation and that the person who did this was in no sense of the term a common carrier. The plaintiff in fixing the price for dusting doubtless did take into consideration the expense of hauling to the farm from the near-by loading ground, but it was one price for the entire transaction. The farmers thought no part of what they paid was for hauling and rightly so since the price given covered the entire expense. It was not a common carrier but rather a contract carrier for which a permit should have been issued, if anything.

The judgment of the trial court was correct, and it is hereby affirmed.

ROSS and STANFORD, JJ., concur.