408 P.2d 224

Harold C. WILLIAMS, dba Williams House Buyer & Mover, and A. H. Greenwood, dba Move-A-Home, Appellants,

v.

The STATE of Arizona, ex rel. Darrell F. SMITH, Attorney General, Appellee.

No. 1 CA–CIV 138.

Court of Appeals of Arizona.

Dec. 1, 1965.

Rehearing Denied Jan. 6, 1966.
Review Denied Feb. 1, 1966.

Ed Hughes, Phoenix, R. G. Langmade, Phoenix, of counsel, for appellants.

Darrell F. Smith, Atty. Gen., by Minne & Sorenson, Phoenix, by Joseph T. Rich, Jr., Sp. Asst. Atty. Gen., for appellee.

CAMERON, Acting Chief Judge.

This is an appeal from a judgment finding that the defendants were operating as "common and/or contract motor carriers of property" without first having acquired the necessary "certificate of public convenience and necessity and/or contract permit", and further restraining such operations on the part of the defendants by way of a permanent injunction.

We are called upon to determine whether a house mover is a common motor carrier, contract motor carrier or private motor carrier under the statutes and law of the State of Arizona.

The facts necessary for a determination of this matter on appeal are as follows: The defendants are house moving contractors licensed by the Registrar of Contractors of the State of Arizona pursuant to Sections 32–1101 through 32–1164 A.R.S. In qualifying for their licenses, they must show a minimum of four years practical experience in their line of endeavor, and must, in addition, take a written examination and post the necessary bonds. The skills required in the dismantling and moving of houses are many and varied. The contractors must have a knowledge of carpentry, plumbing, electrical wiring, and all other trades that go into the construction business. The testimony and the findings of the court reflect that, normally, 50% of the time is used in preparing and loading the houses on the equipment preparatory to moving, that approximately 40% of the time and effort is used for unloading and placing the house on its new location or foundation. Approximately 10% of the time and effort is used in transporting the house from one location to another.

Whenever it is necessary to use the public highway, the defendants must, before moving, secure from the State Highway Department, and municipality, if within the city limits, a permit to move said buildings. These permits usually specify the manner in which the house will be moved, the route that the defendants will take and the time of day in which they will be allowed to make said move.

The testimony below shows that at times the defendants would purchase the houses that they moved, and that at other times they would dismantle, load and move and transport the houses to another site and set them up at the request of and for remuneration by the owner of the house. The testimony is also ample to indicate that on one occasion, the defendant, Williams, resorted to a subterfuge in buying the house for "one dollar" and selling it back at the end of the movement.

The Attorney General, pursuant to Section 40–422 A.R.S., filed a complaint in October, 1963, praying for an injunction against the defendants stating that the defendants had, contrary to the statutes of Arizona and in violation of the regulations of the Corporation Commission of the State of Arizona, acted as common or contract carriers of property for compensation or hire. An answer was filed and trial was held. Formal written judgment including findings of fact and conclusions of law were signed by the court on 11 February, 1965, and notice of appeal was timely filed. Pursuant to Section 40–255 A.R.S. and upon motion duly made, this cause was given priority status and advanced on our calendar.

Defendants contend that they are private motor carriers as defined by 40–601, subsec. A, par. 8 A.R.S. It is the contention of the appellees that defendants are either common carriers of property as defined by 40–601, subsec. A, par. 3 A.R.S., and therefore required to obtain a certificate of convenience and necessity pursuant to paragraph 40–607 A.R.S., or if defendants are not common motor carriers of property, they are a contract motor carrier of property as defined by 40–601, subsec. A, par. 5 A.R.S., and would therefore have to obtain a permit pursuant to 40–608 A.R.S.

Should we find that the defendants are "private motor carriers" it will be unnecessary to discuss the difference between a "common carrier" and a "contract carrier"

as defined by law. For a full discussion of the differences between a common carrier and a contract carrier, as well as a private carrier, we refer the reader to Visco v. State of Arizona ex rel. Pickrell, 95 Ariz. 154, 388 P.2d 155 (1964), rehearing denied 1964. A reading of Judge Nabours opinion in that case is recommended for a proper understanding of what we say here.

Defendants contend they are private motor carriers as defined by the statutes and case law of the State of Arizona. 40–601, subsec. A, par. 8 A.R.S. reads as follows:

" 'Private motor carrier' means any person not included in the term 'common motor carrier' or 'contract motor carrier' who transports by any motor vehicle in excess of six thousand pounds unladen weight property of which such person is the owner, lessee or bailee, when such transportation is for the purpose of sale, lease, rent or bailment, or in the furtherance of any commercial enterprise, but ownership of the property transported shall not be accepted as sufficient proof of a private motor carrier operation if the carrier is in fact engaged in the transportation of property for hire, compensation or remuneration, or if such transportation operations are conducted for profit and not merely as an *incident* to a *commercial enterprise,* provided that towing of disabled vehicles by tow trucks operated in connection with an automobile repair or service business or a wrecking yard shall be deemed to be incidental to a commercial enterprise, and the operator thereof shall be deemed to be a private motor carrier when engaged in such operations." 40–601, subsec. A, par. 8 A.R.S.

The provision concerning tow trucks as an incident to an automobile repair or service business or wrecking yard was added by amendment in 1960.

The term "house moving" is an unfortunate and misleading name when applied to the business in which the defendants are engaged in this case. The dismantling of the house, the disconnecting of the electrical wiring, the separation of the plumbing fixtures, the preparation of the house for moving, the placing of the house on the new foundation, the connecting of electrical wiring and the plumbing, and otherwise preparing the house for occupancy, occupies the major portion of defendants' time and effort and forms the primary basis of any bid defendants make in obtaining the contract. When the houses are moved on the public highway, the movement itself is merely an incident to the main purpose for which the defendants contract with the owner of the property or of the building, and for which the defendants received a remuneration.

It is the contention of the appellee that inasmuch as a part of the contract price paid to the defendants for their services must necessarily include an amount, no matter how small, for the actual transportation over the public highways, that the defendants are in the business of transporting property for hire. It is contended that they are therefore not private carriers of property, but, on the contrary, are either common carriers or contract carriers for which a certificate of convenience and necessity or a permit must be first obtained from the Corporation Commission. A case in point is the Arizona Supreme Court decision in Quick Aviation Company v. Kleinman, 60 Ariz. 430, 138 P.2d 897 (1943). In the Quick case, the primary business of the Quick Aviation Company was that of crop dusting of agricultural fields. The transportation of the insecticides was merely an incident to the actual dusting itself, even though additional charges were made for the transportation of the insecticides based upon the distance that the insecticides had to be hauled to the place where the actual crop dusting took place. Our Supreme Court stated:

"The plaintiff in fixing the price for dusting doubtless did take into consideration the expense of hauling to the farm from the near-by loading ground, but it was one price for the entire transaction. The farmers thought no

294

part of what they paid was for hauling and rightly so since the price given covered the entire expense. It was not a. common carrier but rather a contract carrier for which a permit should have been issued, *if anything.*" Quick Aviation Company v. Kleinman, 60 Ariz. 430, at 434, 138 P.2d 897, at 899. (Emphasis ours.)

Were this the last word on the subject, it might well be that the defendant in the instant case could be classified as a "contract carrier" as opposed to a "common carrier". However, the Arizona Supreme Court went further in a later case and stated as follows:

"Certainly, if one whose principal business is that of servicing and repairing cars tows the same for the purpose of repairing or servicing, he would be transporting them for bailment or in furtherance of his principal commercial enterprise and would thereby qualify as a private carrier."

The opinion went on to say:

" * * * If any portion of the receipts upon which this tax was levied was derived from towage charges not performed in the furtherance of or incident to his garage business but separate and apart therefrom, such receipts would be taxable as income derived from transporting property for compensation as a common carrier or contract carrier." Killingsworth v. Morrow, 83 Ariz. 23, at 26, 315 P.2d 873, at 875 (1957).

It should be noted that this case was decided prior to the 1960 amendment of 40–601, subsec. A, par. 8 A.R.S. which specifically included tow trucks in the definition of private motor carriers.

■ We would certainly agree that if any portion of defendants' income was derived from the transporting on the public highways of houses not in connection with the dismantling and replacing of that house on a new foundation or location, that he would then be subject to the regulations of the Arizona Corporation Commission con-

cerning contract carriers, but none of the facts before this Court indicate that the defendants at any time moved any building except as an incident to the dismantling and disconnecting of the buildings and the placing them upon new locations as per contracts for which they had a license from the Registrar of Contractors. When so transporting the houses they were acting as a bailee, much in the same manner that the owner of a garage or wrecking yard is acting as a bailee in the towing of disabled vehicles. We believe and therefore hold that the defendants were private carriers as defined by our statute and case law and were neither common carriers nor contract motor carriers as contended by the State of Arizona.

■ The appellants further raise the authority of the Attorney General of the State of Arizona to bring this action for and on behalf of the State. Section 40–422 of the Arizona Revised Statutes states that the Commission may direct the Attorney General to commence a proceeding to prevent a person, by way of mandamus or injunction, from further violating the law of the State of Arizona and the Arizona Corporation Commission. Appellant points out that at the trial, testimony was received which indicated that there are no minutes of the Corporation Commission so directing the Attorney General to bring this action. Having ruled that the defendants are not common carriers or contract carriers within the meaning of the statute, but rather private carriers, we do not have to answer this question at this time, but we would call the Attorney General's attention to Section 40–402 A.R.S. and the Arizona Supreme Court case of Dallas v. Arizona Corporation Commission, 86 Ariz. 345, 346 P.2d 152 (1959), which would seem to indicate that before proceeding upon a statutory cause of action such as provided in 40–422 A.R.S., that the Corporation Commission should take some formal action directing the Attorney General to bring a suit of this nature.

Judgment reversed.

DONOFRIO, J., and DONALD DAUGHTON, Superior Court Judge, concurring.

NOTE: Chief Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge DONALD DAUGHTON was called to sit in his stead and participate in the determination of this decision.