497 P.2d 815

The ARIZONA CORPORATION COMMIS-
SION et al., Appellants,

v.

Rex L. NICHOLSON et al., Appellees.

No. 10748.

Supreme Court of Arizona,
In Division.

May 26, 1972.

· Gary K. Nelson, Atty. Gen., by Charles S. Pierson, Asst. Atty. Gen., Phoenix, for appellants.

Chandler, Tullar, Udall & Richmond by Thomas Chandler, Tucson, for appellees.

HOLOHAN, Justice.

This is an appeal by the Arizona Corporation Commission, hereinafter referred to as the Commission, from judgments entered below in favor of Far Horizons East, hereinafter referred to as plaintiffs. The appeal was filed in the Court of Appeals, but we assumed jurisdiction over this matter pursuant to Rule 47(e) (5), Rules of the Supreme Court, 17 A.R.S.

Plaintiffs originally instituted an action in the Superior Court of Maricopa County seeking a declaratory judgment that Far Horizons East was not, by reason of furnishing water to its tenants for domestic consumption, a public service corporation within the meaning of Art. 15, § 2 of the Arizona State Constitution, A.R.S. The Commission, in the same action, counterclaimed asking plaintiffs be declared a public service corporation subject to the jurisdiction of the Commission. Prior to trial the Commission filed an action against plaintiffs to enjoin them from furnishing water to their tenants without first obtaining a certificate of convenience and necessity from the Commission. The two cases were consolidated for trial.

The trial court, sitting without a jury, entered judgment that the plaintiffs were not a public service corporation subject to the jurisdiction of the Arizona Corporation Commission and denied the injunctive relief requested by the Commission.

The question presented on appeal is whether plaintiffs, by reason of their water system, have placed themselves in the category of "public service corporation" which the Arizona Constitution, Art. 15, § 2 defines as:

"Section 2. All corporations other than municipal engaged in * * * furnishing water for irrigation, fire protection, or other public purposes; * * * shall be deemed public service corporations."

If indeed plaintiffs are determined to be a public service corporation as defined by Art. 15, § 2 of the Arizona State Constitution then they will be subject to regulation by the Commission.

The trial court heard the evidence and found the issues in favor of the plaintiffs. There is no dispute as to the facts. Plaintiffs are joint venturers who own and operate a mobile trailer park in Pima County known as Far Horizons East. At the time of the trial they had 250 trailer spaces, with 175 more spaces contemplated. The rental period varies from one night to month-to-month. Rental is open to the

general public but each prospective tenant is screened, and tenants must meet requirements as to the size, make and year of their mobile homes, and compatibility with other tenants.

Rental per month based on the size of the lot is charged for all services the park provides. These services include trailer space, garbage pickup, mail delivery, clubhouse facilities, pool and sporting privileges, use of laundry and car wash facilities, various planned recreational events and, of particular importance to this case, water from plaintiffs' own well. Approximately 10 per cent of the water supplied is used by park tenants for domestic purposes and the remainder for general park purposes. Plaintiffs furnish water by means of a well on the premises which is equipped with a pumping, storage and distribution system representing an investment of some $82,000 out of the approximate sum of one million dollars expended on the total premises.

■ The fact that the plaintiffs are not a corporation does not preclude them from being considered a "public service corporation." Art. 15, § 2 applies and extends to all forms of ownership including individuals. Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L.Ed. 973 (1917); Williams v. Pipe Trades Industry Program of Arizona, 100 Ariz. 14, 409 P.2d 720 (1966).

■ The plaintiffs argue they cannot be classified as a public service corporation since they do not serve the general public, and that the select group of its tenants they serve cannot be considered the public. The argument would have merit if the issue were whether or not plaintiffs are a public utility. We defined that term in Trico Electric Cooperative Inc. v. Corporation Commission, 86 Ariz. 27, 38, 339 P.2d 1046, 1054 (1959) to be:

"A public utility is a person, corporation or other association carrying on an en-terprise for the accommodation of the public, the members of which as such are entitled as of right to use its facilities. It carries with it the duty of one attempting to furnish the service to serve the public and treat all persons alike without discrimination. Highland Dairy Farms Co. v. Helvetia Milk Condensing Co., 308 Ill. 294, 139 N.E. 418, 420; Pulitzer Pub. Co. v. Federal Communication Commission, 68 App.D.C. 124, 94 F.2d 249; Junction Water Co. v. Riddle, 108 N.J.Eq. 523, 155 A. 887, 889."

Clearly plaintiffs cannot be classified as a public utility since they only serve members of their own mobile trailer park. Members of the neighboring community would have no right to demand water service. The question here, though, is the status of plaintiffs as a public service corporation. In *Trico*, we distinguished this from a utility and held that such a classification was "something less than a full-fledged 'public utility.'" That "something less" was the requirement to serve the public at large with a commodity having a public interest. Thus where the corporation, association, etc., otherwise meets the definition of a public service corporation, the fact that the general public has no right to demand such service is not material. If a sizable portion of the public is served even though that group is restricted —as in *Trico*—at least the necessary impact of the service on the public is met. Natural Gas Service v. Serv-Yu Co-op., 70 Ariz. 235, 219 P.2d 324 (1950). Thus, in *Trico* as well as *Natural Gas*, we rejected the rather rigid position taken by some states that the "nature of the service must be such that all members of the public have an enforceable right to demand it." City of Englewood v. City and County of Denver, 123 Colo. 290, 229 P.2d 667 (1951); Public Utilities Commission v. Colorado Interstate Gas Co., 142 Colo. 361, 351 P.2d 241 (1960). To the extent that this position is relied upon in this case as to the

classification of public service corporation, those cases are inapplicable.[1]

The question remains whether plaintiffs by reason of their water service to a restricted group, tenants of the park, constitute a public service corporation subject to regulation by the Commission.

State regulation of private property can be had only pursuant to police power, and this power is wholly dependent upon the dedication of private property to a public use with a public interest. Noble State Bank v. Haskell, 219 U.S. 104, 31 S. Ct. 186, 55 L.Ed. 112 (1911); German Alliance Insurance Co. v. Superintendent of Ins. of Kansas, 233 U.S. 389, 34 S.Ct. 612, 58 L.Ed. 1011 (1914); Nebbia v. People of the State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469 (1934); Am. Fed. of Labor v. American Sash & Door Co., 67 Ariz. 20, 189 P.2d 912 (1948), affirmed 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222, 6 A.L.R.2d 481 (1949). When one devotes his property to a use in which the public has an interest he, in effect, grants to the public an interest in that use, and must submit to control by the public for the common good. Munn v. State of Illinois, 94 U.S. 113, 24 L.Ed. 77 (1877).

The Commission relies heavily upon the case of Natural Gas Service v. Serv-Yu Cooperative, supra, to support the position that the plaintiffs in this case are a public service corporation. The Court held in the cited case that Serv-Yu, a cooperative organized for the purpose of "manufacturing, purchasing, acquiring and accumulating natural gas" and to distribute this gas to its members was a public service corporation. The factors, so far as material to this case, considered in determining that Serv-Yu was a public service corporation included the nature of the commodity supplied, the public interest in the commodity, the actual business or activity of the corporation or association, the means or manner in which requests for service from the public are accepted.

Plaintiffs concede, and there can be no question that the commodity, water in this case, is one of special public interest. It is, though, equally clear that while the supplying of water is usually a subject matter of utilities' service, this alone does not carry the presumption that all use of service in connection with such water is a dedication to public use. Dedication of private property to a public use is a question of intention to be shown by the circumstances of each case, Natural Gas Service v. Serv-Yu Co-op., supra. We must look to what, in fact, the corporation or association does, Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 60 L. Ed. 984 (1916). In Natural Gas as in Trico in holding both public service corporations we looked to substance not form. Both were actually in the business of supplying a commodity in which the public was interested, one gas, the other electricity. In both, a substantial part of the public was affected.

As opposed to Trico and Natural Gas, plaintiffs here are not in the business of supplying water. They are in the business of renting trailer spaces. A necessary but clearly incidental part of that business is to provide water through its own plant. It is conceded without this water plaintiffs could not stay in the business, but the fact remains that the furnishing of water is in support and incidental to plaintiffs' business of renting trailer spaces.

In General Alarm v. Underdown, 76 Ariz. 235, 262 P.2d 671 (1953), we held that a corporation maintaining an emergency signal and alarm system as part of the burglary services it offered, was not a public service corporation within the meaning of Art. 15, § 2. We said there that the transmission of messages was merely inci-

---

1. Similarly to the extent that Drexelbrook Associates v. Pennsylvania Public Utility Commission, 418 Pa. 430, 212 A.2d 237 (1965) is relied upon for its holding that the tenants of a landlord who provided gas, electricity and water were not the "public," it is not here applicable.

dental to the operation of plaintiffs' main business which was property protection:

"The constitution says it must be engaged in sending messages. Necessarily this means it must be in the *business* of sending messages for the *public* * * *. Its business is essentially that of property protection."

The rationale behind this distinction was expressed in *General Alarm,* supra.

" 'To be a public service corporation, its business and activities must be such as to make its rates, charges, and methods of operation a matter of public concern. It must be, as the courts express it, clothed with a public interest to the extent clearly contemplated by the law which subjects it to governmental control. Free enterprise and competition is the general rule. Governmental control and legalized monopolies are the exception and are authorized under our constitution only for that class of business that might be characterized as a public service enterprise. The theory is that the right to public regulation and protection outweighs the customary right of competition. If the public contact with a business is such that its necessities and convenience can be better served through governmental supervision and controlled monopoly, thereby eliminating customary competition, the state may exercise its police power to that end. *Such invasion of private right cannot be allowed by implication or strained construction. It was never contemplated that the definition of public service corporations as defined by our constitution be so elastic as to fan out and include businesses in which the public might be incidentally*

*interested* * * *.' " [emphasis ours] 76 Ariz. at 238, 262 P.2d at 672, 673.

We have consistently followed this policy in other cases. In Arizona Corporation Commission v. Continental Security Guards, 103 Ariz. 410, 443 P.2d 406 (1968), we held that a business which furnished security guards for a business and supplied an armored car service as part of that protection was not a common carrier because the armored car service was merely incidental to and part of the main business of protecting money and securities.

In Quick Aviation Co. v. Kleinman, 60 Ariz. 430, 138 P.2d 897 (1943) we held that the primary business of Quick Co. was crop dusting, and the transporting of insecticides was merely incidental to the main job of dusting.[2]

These decisions have limited the Commission's authority in these areas. We expressed in Arizona Corporation Commission v. Continental, supra, 103 Ariz. at 415, 443 P.2d at 411, the "underlying aversion of this Court to any extension of the power and scope of the corporation commission to businesses not patently in need of the Commission's control."[3]

■ Similarly in this case the plaintiffs' incidental but necessary water service, while engaged in the private enterprise of renting trailer spaces, in no way brings them under the Commission's regulation. While clearly it must be assumed that the cost to plaintiffs of the water system is taken into consideration, only one monthly charge for all services was rendered. Furthermore, the park clearly is not open to all. Not only are there rather discretionary restrictions of compatibility with other

2. For other decisions see Killingsworth v. Morrow, 83 Ariz. 23, 315 P.2d 873 (1957). We held there that towing autos was incidental to the business of servicing and repairing; Gibbons v. Construction Trucking Service, 102 Ariz. 383, 430 P.2d 145 (1967); Visco v. State ex rel. Pickrell, 95 Ariz. 154, 388 P.2d 155 (1963); Williams v. State ex rel. Smith, 2 Ariz. App. 291, 408 P.2d 224 (1965).

3. Contra to this position is Cottonwood Mall Shopping Center Inc. v. Utah Power and Light Company, 440 F.2d 36 (10th Cir. 1971) holding under Utah law a shopping center operator, who supplied electricity to the lessees of his shopping mall, a utility subject to regulation.

tenants, but also trailer size and make restrictions.

The cases relied on by the Commission are distinguishable. In Wingrove v. Public Service Commission, 74 W.Va. 190, 81 S.E. 734 (1914), the mine produced electricity not only for operating the mines but to supply power to residents of the town. The court held that to the extent the mine furnished electricity to such other persons it was subject to regulation. We find this in no way contrary to our holding here. Clearly production of electricity for the mine's operation was incidental but necessary to the mine's main business. Electric power to the townspeople though, in no way was connected to the mining business. They clearly were engaged in a separate and distinct business of supplying power to the town. In short, the mining company had two businesses, one of which was subject to regulation by reason of the commodity supplied to the public.[4]

The Commission uses the example of a land developer who also supplied water to the lots and this operation is generally held to be the activity of a public service corporation. Again the developer is in two businesses. While concededly he is forced to supply water in order to sell the lots;

after the sale of the lots a new business relationship occurs—the business of supplying water. As above, the developer has two businesses, and he charges separately for each product.

The Commission suggests that the large number of persons involved in renting spaces need the protection of regulation by the Commission, and therefore, public policy demands that we hold the plaintiffs to be a public service corporation. The only authority supplied for this position is a dissenting opinion in Drexelbrook Associates v. Pennsylvania Public Utilities Commission, 418 Pa. 430, 212 A.2d 237 (1965). The argument of the Commission on this point more appropriately should be submitted to the Legislature because it involves a rather substantial change in the present law on the criteria for determining what is a public service corporation. The protection of the public using plaintiffs' facilities is provided by other portions of our statutes dealing with public health, water, landlord-tenant relations, etc.

The judgment of the trial court is affirmed.

CAMERON, V. C. J., and STRUCKMEYER, J., concur.

---

4. Similarly in Consolidated Coal v. Martin, 113 F.2d 813 (6th Cir. 1940) electricity was produced by the mines and distributed to tenants and non-tenants for domestic use.