778 P.2d 1285

**ARIZONA WATER COMPANY, an
Arizona corporation,
Plaintiff–Appellant,**

v.

**ARIZONA CORPORATION COMMISSION, an agency of the State of Arizona; William D. and Challys J. Ullery, husband and wife; Thomas E. and Josephine Davis, husband and wife; Gene B. and Pamela Riegle, husband and wife; Frank and Geraldine T. Despain, husband and wife; Roger L. and Claudia Cochran, husband and wife; James E. and M. Ann Rhineheart, husband and wife; Kenneth G. and Diane E. Browne, husband and wife, Defendants–Appellees.**

1 CA–CV 88–232.

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 31, 1989.

**390**

Robert W. Geake, Gen. Counsel, Arizona Water Co., Phoenix, and Linden, Chapa & Fields by Hugh A. Holub, Tucson, for plaintiff-appellant.

Janice M. Urbanic, Arizona Corp. Com'n, Phoenix and Law Office of John G. Gliege by John G. Gliege, Flagstaff, for defendants-appellees.

## OPINION

GERBER, Presiding Judge.

Appellant Arizona Water Company (Company) appeals from a judgment of the superior court affirming an opinion and order of the Arizona Corporation Commission (Commission).

The Company is a public service corporation furnishing public utility water service to customers in Overgaard, Arizona, pursuant to a certificate of convenience and necessity issued to it by the Commission. In September 1985, the Company filed a complaint with the Commission alleging that certain well owners (appellees in this appeal) were acting as a public service corporation within the Company's certificated area. Specifically, the complaint alleged that the well owners were providing water to two individuals who did not own an interest in the well. In September 1986, the Commission issued its opinion concluding that the well owners were not acting as a public service corporation and ordering the Company to extend its distribution main along the eastern side of State Highway 260 for the benefit of its existing customers in the area. In March 1988, the superior court affirmed the Commission's decision.

The water well involved in this case was drilled in 1955 on Harold J. Crandall's 160-acre homestead. Crandall was the grandfather of appellee M. Ann Rhineheart. At the time the water well was drilled and its distribution system extended through the homestead area, State Highway 260 did not exist, and there was no public utility water service in the area. In 1962, the Company was granted its franchise to provide water service in the area. Over time, the original homestead was broken into parcels which were purchased by several family members and other persons.

At present, five couples hold an undivided three-twentieths interest in the well as joint tenants: Gene and Pamela Riegle; Frank and Geraldine Despain; Roger and Claudia Cochran; James and M. Ann Rhineheart; and Kenneth and Diane Browne. An undivided one-fourth interest is held by Thomas and Josephine Davis. William and Challys Ullery hold a vendor's interest in the Davis' interest. Two non-owners, Lawrence Horton and Ernest White, also receive water from the well. All the parcels receiving water from the well are located on the original homestead, with the exception of Horton's and Davis' parcels.

The Company's burden in challenging the Commission's decision was to show by "clear and satisfactory evidence" that the decision was "unreasonable or unlawful." A.R.S. § 40–254(E). We must uphold the superior court's ruling if it is supported by reasonable evidence. *Tucson Elec. Power Co. v. Arizona Corp. Comm'n*, 132 Ariz. 240, 244, 645 P.2d 231, 235 (1982).

*Status as a Public Service Corporation*

In determining whether there was reasonable evidence to support the superior court's determination that the well owners were not operating as a public service corporation, we review the factors set forth in *Natural Gas Service Co. v. Serv–Yu Cooperative*, 70 Ariz. 235, 219 P.2d 324 (1950). The *Serv–Yu* court identified the following factors as determinative of whether an entity is a public service corporation:

1. What the corporation actually does;

2. Articles of incorporation, authorization, and purposes;

3. A dedication to public use;
4. Dealing with the service of a commodity in which the public has been generally held to have an interest;
5. Monopolizing or intending to monopolize the territory with a public service commodity;
6. Acceptance of substantially all requests for service;
7. Actual or potential competition with other corporations whose business is clothed with public interest;
8. Service under contracts and reserving the right to discriminate

*Id.* at 237–38, 219 P.2d at 325–26 (citations omitted). Accordingly, we must consider these eight factors.

## WHAT THE CORPORATION ACTUALLY DOES; ARTICLES OF INCORPORATION, AUTHORIZATION, AND PURPOSES

The well owners have not formed a corporation or drawn up articles of incorporation. Under the terms of a June 1985 operating agreement, each well owner and non-owner White pays $20.00 per month for each building on an owner's property which uses water. Taking the well owners as an entity, it is clear that "what the [entity] actually does" is provide themselves and two non-owners with water for essentially domestic purposes.[1]

## DEDICATION TO PUBLIC USE; WHETHER THE PUBLIC GENERALLY HAS AN INTEREST IN THE COMMODITY; ACCEPTANCE OF SUBSTANTIALLY ALL REQUESTS FOR SERVICE; INTENT TO MONOPOLIZE

The well owners have provided water, a commodity in which the public has been held to have an interest, to Horton and White, both non-owners. However, as the court stated in *Arizona Corporation*

*Comm'n v. Nicholson,* 108 Ariz. 317, 320, 497 P.2d 815, 818 (1972):

> ... while the supplying of water is usually a subject matter of utilities' service, this alone does not carry the presumption that all use of service in connection with such water is a dedication of public use. Dedication of private property to a public use is a question of intention to be shown by the circumstances in each case.

Horton receives his water pursuant to an agreement originally entered into in 1966. He pays a minimal charge of $6.00 per month. White purchased his property in 1981; he pays the same price for his water as the well owners. Aside from these two non-owners, the well owners have refused all other requests for service from the well. They have not engaged in any solicitation for customers. The Company's brief acknowledges that the question of "how many customers are necessary before an entity can be determined to be serving the public ..." is "... not a matter for rigid determination." Nevertheless, the Company argues that the well owners became a public service corporation as soon as service was extended to any non-owner. *Serv–Yu* does not support such a proposition, and we decline to adopt such a rigid rule. We conclude that the well owners did not intend to dedicate their well to public use and did not monopolize or intend to monopolize water service in the area. *Serv–Yu,* 70 Ariz. at 239–40, 219 P.2d at 327.

## ACTUAL OR POTENTIAL COMPETITION

The well owners have reduced the Company's potential customer base by two or fewer.[2] The competition currently posed by the well owners to the Company does not suggest that the well owners are acting as a public service corporation, unlike cases where a "... substantial portion of the public ..." is sold a commodity in which the public has an interest. *Id.* at 242, 219

---

1. Water from the well is occasionally consumed by patrons of a pizzeria owned by appellees James and M. Ann Rhineheart.

2. Horton has made preliminary inquiries of the Company concerning his becoming a customer of the Company.

P.2d at 329. *See also Nicholson,* 108 Ariz. at 320, 497 P.2d at 818.

## SERVICE UNDER CONTRACT

The June 1985 operating agreement governing distribution of water from the well is not analogous to sham membership organizations open to all subscribers and serving a substantial portion of the public, but evading regulation because they were not engaged in supplying a commodity to the entire public as a class. *Serv–Yu,* 70 Ariz. 239, 219 P.2d at 327. In a word, there is no evidence that the well-owners are engaged in a sham to evade regulation.

### *Extension of Distribution Main*

The Company also argues that the Commission unlawfully ordered it to extend its distribution main along the eastern side of State Highway 260 to complete its system loop for the benefit of its existing customers in the Overgaard division. However, A.R.S. § 40–331(A) states:

> When the commission finds that additions or improvements to or changes in the existing plant or physical properties of a public service corporation ought reasonably to be made, or that a new structure or structures should be erected, to promote the security or convenience of its employees or the public, the commission shall make and serve an order directing that such changes be made or such structure be erected in the manner and within the time specified in the order. If the commission orders erection of a new structure, it may also fix the site thereof.

The Commission's order was within its statutory discretion. As a public service corporation holding a certificate of convenience and necessity, the Company was obligated to comply with Commission orders promulgated in the public interest. This obligation includes orders mandating installation of additional facilities. *James P. Paul Water Co. v. Arizona Corporation Comm'n,* 137 Ariz. 426, 429–30, 671 P.2d 404, 407–08 (1983).

## CONCLUSION

Our review of the *Serv–Yu* factors and of A.R.S. § 40–331(A) demonstrates that reasonable evidence supported the superior court's judgment affirming the Commission decision. Accordingly, the judgment of the superior court is affirmed.

GRANT, C.J., and BROOKS, J., concur.