142 P.3d 1240

SOUTHWEST TRANSMISSION COOP-
ERATIVE, INC., a non-profit Arizona
electric transmission cooperative, Plain-
tiff–Appellant,

v.

The ARIZONA CORPORATION COM-
MISSION, an agency of the State of
Arizona, Defendant–Appellee.

No. 1 CA–CV 05–0369.

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 12, 2006.

**428**

Gallagher & Kennedy, PA By Michael M. Grant, Todd C. Wiley, Phoenix, Attorneys for Plaintiff–Appellant.

Arizona Corporation Commission By Timothy J. Sabo, Janet F. Wagner, Linda Fisher, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

OROZCO, Judge.

¶ 1 The issue on appeal is whether the superior court correctly affirmed the Arizona Corporation Commission's (Commission) decision concluding that Southwest Transmission Cooperative, Inc. (SWTC), is a public service corporation pursuant to Article 15, Section 2, of the Arizona Constitution and is therefore subject to the Commission's regulation pursuant to Article 15, Section 3. We affirm the superior court's decision because SWTC satisfies the definition of a public service corporation by furnishing electricity for light, fuel or power and is an entity "clothed with a public interest" under the eight factors first articulated in *Natural Gas*

*Serv. Co. v. Serv–Yu Coop.*, 70 Ariz. 235, 219 P.2d 324 (1950). Because we conclude SWTC is a public service corporation, we do not consider the issue of whether it is a common carrier pursuant to Article 15, Section 10.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In the superior court proceedings, the parties stipulated to the facts; on appeal, the parties agree that the facts are undisputed. In 1999, SWTC, a non-profit Arizona rural electric transmission cooperative, was organized under Arizona Revised Statutes (A.R.S.) sections 10–2121 to –2149 (2004), in anticipation of the restructuring of the Arizona Electric Power Cooperative (AEPCO), an Arizona non-profit rural electric generation and transmission cooperative. The Commission previously determined that AEPCO was a public service corporation under Article 15, Section 2, of the Arizona Constitution, subjecting it to the Commission's jurisdiction. After restructuring in 2001, AEPCO separated into three cooperative corporations.[1] AEPCO retained the generation function, and SWTC purchased AEPCO's transmission business, including the transmission facilities and assets and rights to transmit electricity under various agreements. A third entity, Sierra Southwest Cooperative Services, Inc., was created to operate as an electric service provider.

¶ 3 As a rural electric transmission cooperative, SWTC provides or contracts to provide only wholesale transmission service between the electric generator and electric distribution cooperatives; it does not provide retail service or transmit electricity for direct consumption by end users.

¶ 4 SWTC provides transmission service to its membership (those owning facilities at a substation interconnected with SWTC's transmission system) and to non-members (those entities or natural persons entitled to use its transmission services pursuant to Section 211 of the Federal Power Act, 16 U.S.C.

---

1. Creating and providing electricity to consumers occurs in three phases: generation, transmission and distribution. *Phelps Dodge Corp. v. Ariz. Elec. Power Coop., Inc.*, 207 Ariz. 95, 101, ¶ 3, 83 P.3d 573, 579 (App.2004). First, electricity is generated in power plants. *Id.* Next, it is transmitted over high-voltage power lines to distributors. Finally, the electricity is transformed into low-voltage power and distributed to consumers. *Id.*

§ 824(j) (2000)). In either case, the parties enter into contracts or agreements for transmission service with SWTC.

¶ 5 Qualified applicants must comply with membership requirements and be approved by SWTC's Board of Directors. SWTC may decline service to a member if the entity does not meet membership qualifications in SWTC's bylaws, if the parties cannot agree on a transmission service contract, if SWTC cannot provide the requested service, has insufficient capacity or if the entity will not follow SWTC's operating and other rules. SWTC may also deny service to non-members if it expects revenues from all non-members to total more than fifteen percent of its annual revenues, which would cause SWTC to lose its tax-exempt status.

¶ 6 As a "transmitting utility" under the Federal Power Act providing only transmission service in interstate commerce, SWTC is financed and regulated by the Rural Utilities Service (RUS), a division of the United States Department of Agriculture. RUS must approve SWTC's terms of service, contracts, management and other matters. When rates are not subject to state regulation, SWTC must obtain RUS rate approval. RUS must approve all transmission service contracts. RUS also requires that revenue from contracts for service to distribution cooperatives and other sources be sufficient to meet SWTC's operating and maintenance expenses, the cost of transmission service, and principal and interest payments on its debt. RUS's primary concerns are the financial viability of the cooperative and the provision of reliable power to rural areas at a reasonable price. RUS may, but does not normally, review retail rates of electric distribution cooperatives.

¶ 7 As a transmitting utility, SWTC is also subject to limited jurisdiction of the Federal Energy Regulatory Commission (FERC) under Section 211 of the Federal Power Act. SWTC maintains an Open Access Transmission Tariff to meet the requirements for reciprocity under FERC Order No. 888.[2]

¶ 8 On April 30, 2002, SWTC filed an application with the Commission seeking a declaration that it was not a public service corporation pursuant to Article 15, Section 2, of the Arizona Constitution and was therefore not subject to regulation by the Commission pursuant to Article 15, Section 3.

¶ 9 SWTC argued that it was not a public service corporation because it does not furnish electricity for light, fuel or power. Rather, SWTC contended that it transmits electricity at wholesale to other utilities for resale. SWTC also asserted that based on prior case law, the nature of its business operations and its corporate structure compelled the conclusion that it was not a public service corporation. SWTC further argued that regulatory policy supported the view that SWTC need not be regulated as a public service corporation partly because, as a non-profit cooperative, it set rates only to cover costs of operation, necessary financial reserves and mortgage requirements. Additionally, SWTC asserted that because it was subject to oversight by FERC and RUS, the need for additional regulation by the Commission was diminished. Finally, SWTC argued that the Commission continued to retain control over the final retail rate distributors charged because the Commission has full jurisdiction to address concerns regarding the appropriateness of the wholesale transmission cost component in the context of its authority over retail rates.

¶ 10 The Commission staff disputed SWTC's assertion that it did not furnish electricity for power and argued that the constitutional definition of a public service corporation did not exclude a wholesale provider. The Commission staff further argued that the *Serv-Yu* factors and case law supported a finding that SWTC was a public service corporation subject to the Commission's jurisdiction. The staff also contended that SWTC is currently regulated by FERC, RUS and to a limited extent the Commission.

¶ 11 On March 12, 2004, the Commission issued Decision No. 66835 finding that SWTC was a public service corporation. The Com-

---

**2.** At oral argument before the ACC, SWTC explained that Order No. 888 requires cooperatives that want access to other public utilities and transmission systems to allow access to its transmission system on equal and nondiscriminatory terms.

mission concluded that, under the language of Article 15, Section 2, SWTC "furnished" electricity to the distribution cooperatives that in turn furnished it to end users. The Commission found no evidence that Article 15, Section 2 was intended to foreclose jurisdiction over wholesale providers of electricity such as SWTC and that the nature of SWTC's business, case law and prior Commission decisions supported finding that SWTC was a public service corporation.

¶ 12 SWTC sought judicial review of the Commission's decision pursuant to A.R.S. § 40–254 (2001). The superior court affirmed the Commissions ruling, finding that SWTC was a public service corporation because it furnished electricity for light, fuel or power and because it was a common carrier. The court found that it could not separate the transmission of electric power to the distributor from the furnishing of that power to the consumer. The court also applied the eight-factor test found in *Serv–Yu,* 70 Ariz. at 237–38, 219 P.2d at 325–26, and concluded that, although four factors might favor SWTC's position that it was not a public service corporation, the balance of factors weighed in favor of finding that SWTC was a public service corporation. The court entered judgment affirming the Commission's Decision No. 66835 in its entirety. SWTC timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–2101.B (2003) and 40–254.D (2001).

## STANDARD OF REVIEW

¶ 13 Whether an entity is a public service corporation and therefore subject to the Commission's jurisdiction is a question of law when the parties do not dispute the facts. *Sw. Gas Corp. v. Ariz. Corp. Comm'n,* 169 Ariz. 279, 285, 818 P.2d 714, 720 (App.1991). We review questions of law de novo. *Phelps Dodge Corp.,* 207 Ariz. at 103, ¶ 16, 83 P.3d at 581.

¶ 14 Although the Commission agrees that de novo review is appropriate for legal questions, it asserts that this court must give great deference to the agency's interpretation and application of a statute or constitutional provisions administered by the agency

and must uphold the Commission's ruling if it is a "reasonable interpretation."

¶ 15 In *Southwest Gas,* this court addressed the standard to be applied when considering whether an entity is a public service corporation. While acknowledging that the initial interpretation of the constitution by the Commission is entitled to respect, this court determined that "[i]n the absence of an express and specific grant of power to the Commission to determine as a matter of law who is a public service corporation under the constitution, that final responsibility is vested in the courts." *Sw. Gas,* 169 Ariz. at 283, 818 P.2d at 718. Similarly, the court noted that, in general, an appellate court upholds a superior court ruling affirming a Commission decision if the superior court's ruling is supported by "reasonable" or "substantial" evidence. *Id.* at 284, 818 P.2d at 719. The *Southwest Gas* court observed, however, that in dealing specifically with the question of whether an entity is a public service corporation, Arizona courts have not applied the substantial or reasonable evidence standard but resolved the question as a matter of law. *Id.* at 284–85, 818 P.2d at 719–20. Particularly in circumstances in which the parties have stipulated to the facts as they have in this case, *Southwest Gas* concluded that the question of whether an entity is a public service corporation is a pure question of law and the substantial evidence standard has no application. *Id.* at 285, 818 P.2d at 720.

## DISCUSSION

¶ 16 Determining whether an entity is a public service corporation requires a two-step analysis. First, we consider whether the entity satisfies the literal and textual definition of a public service corporation under Article 15, Section 2, of the Arizona Constitution. *Id.* at 285–86, 818 P.2d at 720–21. Second, we evaluate whether the entity's business and activity are such "as to make its rates, charges, and methods of operations a matter of public concern," by considering the eight factors articulated in *Natural Gas Serv. Co. v. Serv–Yu Coop.,* 70 Ariz. at 237–38, 219 P.2d at 325–26.

¶ 17 Article 15, Section 2, of the Arizona Constitution defines "public service corporations" as "[a]ll corporations other than municipal engaged in furnishing gas, oil, or electricity for light, fuel, or power. . . ."

¶ 18 Both SWTC and the Commission assert that the plain language of Article 15, Section 2 supports their respective positions. SWTC argues that it is not engaged in "furnishing . . . electricity for light, fuel, or power." Rather, SWTC argues that it "transmits" electricity at wholesale to another utility for resale. SWTC contends that "to furnish" requires some transfer of possession to the consumer, which it claims it does not do. The Commission argues that in transmitting electricity to distributors, SWTC does in fact furnish electricity for light, fuel or power to its members and other customers. The Commission argues that "to furnish" requires only use by the recipient, not end use or retail consumption, and that the member cooperatives that receive the electricity from SWTC use the electricity by converting the high-voltage electricity to retail use levels for distribution, which satisfies the definition.

¶ 19 The meaning of "furnish" in Article 15, Section 2 was considered in *Williams v. Pipe Trades Industry Program of Arizona*, 100 Ariz. 14, 20, 409 P.2d 720, 724 (1966). In *Williams*, an entity applied for a certificate of convenience and necessity "[t]o furnish hot or cold circulating chemicals, gases or water for heating or cooling purposes." *Id.* at 16, 409 P.2d at 721. In considering whether such conduct constituted "furnishing water for irrigation, fire protection, or other public purposes" under Article 15, Section 2, the court noted that "furnish" was defined as "to provide or supply with what is needed, useful or desirable," and concluded that the word connoted a transfer of possession. *Id.* at 20, 409 P.2d at 724. In that case, the court determined that the company did not "furnish" water under Article 15, Section 2, reasoning that the water was the means or conduit by which the heat was supplied and that no transfer of possession of the water occurred. *Id.*

¶ 20 SWTC argues that in transmitting electricity from the generator to the distributor it does not transfer possession of the electricity and therefore does not "furnish" electricity for "light, fuel, or power." SWTC advocates that we view it simply as a conduit between the generators to the distributors. Instead, we view SWTC as the intermediary that takes possession of the electrical power from the generator and transfers possession of that electricity to the distributors. Unlike *Williams*, in which the company retained possession of the water and the water was not the actual product being provided, the commodity being transferred or transmitted in this case, is in fact, electricity. SWTC therefore furnishes electricity pursuant to Article 15, Section 2, of the Arizona Constitution.

¶ 21 SWTC further argues that the distributors to which it transmits the electricity do not use the electricity for "light, fuel, or power," a phrase that SWTC contends suggests end use by a consumer. The Commission responds that the distributors use the electricity by converting it for retail use, which therefore satisfies the definition of "furnish" in *Williams*. Because the electricity in this case will ultimately be used for light, fuel or power and Article 15, Section 2, does not expressly exclude a wholesaler that transmits electricity for that ultimate purpose, we reject SWTC's contention that Article 15, Section 2, requires an immediate end use by a consumer.

¶ 22 We also note that SWTC's "end use" argument is undercut by the presence of the word "power" in this constitutional language. By transmitting electricity from a generating entity to the distributors, SWTC is "furnishing power" to the distributors, which sell the electricity as "power" to various customers.

■ ¶ 23 Merely meeting the textual definition, however, does not establish an entity as a "public service corporation." *Sw. Gas,* 169 Ariz. at 286, 818 P.2d at 721. To be a "public service corporation," an entity's "business and activities must be such as to make its rates, charges and methods of operation, a matter of public concern, clothed with a public interest to the extent contemplated by law which subjects it to governmental control—its business must be of such a nature that competition might lead to abuse

detrimental to the public interest." *Trico Elec. Coop., Inc. v. Corp. Comm'n,* 86 Ariz. 27, 34–35, 339 P.2d 1046, 1052 (1959) (citing *Gen. Alarm, Inc. v. Underdown,* 76 Ariz. 235, 262 P.2d 671 (1953)).

▐ ¶ 24 The Commission has broad authority to regulate public service corporations in Arizona. *See* Ariz. Const. art. 15, § 3. The purposes of regulation are to preserve those services indispensable to the population and to ensure adequate service at fair rates where the disparity in bargaining power between the service provider and the utility ratepayer is such that government intervention on behalf of the ratepayer is necessary. *Sw. Gas,* 169 Ariz. at 286, 818 P.2d at 721 (citing *Petrolane–Ariz. Gas Serv. v. Ariz. Corp. Comm'n,* 119 Ariz. 257, 259, 580 P.2d 718, 720 (1978)). Competition is the general rule. *Gen. Alarm,* 76 Ariz. at 238, 262 P.2d at 672. However, when an entity dedicates private property to a use in which the public has an interest, it grants the public an interest in that use and must submit to regulation for the public good. *Ariz. Corp. Comm'n v. Nicholson,* 108 Ariz. 317, 320, 497 P.2d 815, 818 (1972). The right to public protection then outweighs the right of competition. *Gen. Alarm,* 76 Ariz. at 238, 262 P.2d at 672.

▐ ¶ 25 The fact that an entity may incidentally provide a public commodity is not sufficient to subject it to regulation, it must be in the business of providing a public service. *Nicholson,* 108 Ariz. at 320, 497 P.2d at 818; *Gen. Alarm,* 76 Ariz. at 239, 262 P.2d at 673. In *Serv–Yu,* the Arizona Supreme Court articulated eight factors to be considered in identifying those corporations " 'clothed with a public interest' and subject to regulation because they are 'indispensable to large segments of our population.' " *Sw. Gas,* 169 Ariz. at 286, 818 P.2d at 721 Those eight factors are:

(1) What the corporation actually does.

(2) A dedication to public use.

(3) Articles of incorporation, authorization, and purposes.

(4) Dealing with the service of a commodity in which the public has been generally held to have an interest.

(5) Monopolizing or intending to monopolize the territory with a public service commodity.

(6) Acceptance of substantially all requests for service.

(7) Service under contracts and reserving the right to discriminate is not always controlling.

(8) Actual or potential competition with other corporations whose business is clothed with public interest.

*Id.* at 286, 818 P.2d at 721; *Serv–Yu,* 70 Ariz. at 237–38, 219 P.2d at 325–26. The *Serv–Yu* factors act as guidelines for analysis, and we are not required to find all eight factors to conclude that a company is a public service corporation. *Sw. Gas,* 169 Ariz. at 287, 818 P.2d at 722.

¶ 26 First, when determining what a company actually does, a court considers whether the company's actions affect "so considerable a fraction of the public that it is public in the same sense in which any other may be called so." *Serv–Yu,* 70 Ariz. at 240, 219 P.2d at 327. SWTC argues that it merely supplies transmission service at wholesale by private contract. The superior court, in finding that this factor weighed in favor of SWTC's being a public service corporation, considered SWTCs role in providing electricity to consumers. SWTC objects to that more expansive view, arguing it is inconsistent with *Serv–Yu.*

¶ 27 We do not find *Serv–Yu* requires the narrow construction SWTC advocates. In supplying its transmission service, SWTC delivers to its distributors the electricity on which thousands of retail consumers rely. Nothing in *Serv–Yu* precludes consideration of this fact.

[9] ¶ 28 Next, whether a company has dedicated its property to public use is a question of intent shown by the circumstances of the individual case. *Nicholson,* 108 Ariz. at 320, 497 P.2d at 818. "[A]n owner ... must at least have undertaken to actually engage in business and supply at least some of his commodity to some of the public." *Serv–Yu,* 70 Ariz. at 238, 219 P.2d at 326. SWTC argues that it has not dedicated its business to public use because it

does not provide service to the public and has never made any offers to serve retail customers. We again find this view unnecessarily narrow. SWTC is in the business of supplying electricity to retail users, albeit through its member distributors. Its role is integral in providing electricity to the public. SWTC itself has acknowledged this commitment to the retail recipients of the power it transmits when it declared in its 2002 Annual Report that its single goal is "providing reliable electric power to homes and businesses" that rely on it to transmit power to the member distributors. SWTC's role in providing electricity to consumers and its self-professed goal demonstrate a commitment of its business to the public.

¶ 29 Third, neither SWTC nor the Commission argues that any provision in SWTC's articles of incorporation support their respective positions. However, SWTC's stated goal of providing reliable electric power to their member distributors' customers suggests its purpose is to serve the public.

¶ 30 Next, the parties agree that in transmitting electricity, SWTC is obviously dealing with the service of a commodity in which the public has an interest. They also agree that SWTC is not asserting any monopoly rights.

¶ 31 Sixth, SWTC does not accept all requests for service. Membership is restricted to entities meeting certain membership criteria: the entities are required to submit an application; agree to be bound by certain rules, requirements and contracts; and approved by SWTC's Board of Directors. Non-members may contract for service, but SWTC may deny service if revenues from non-members are expected to total more than fifteen percent of its revenues.

¶ 32 Next, the parties agree that SWTC provides its service through contracts.

¶ 33 Finally, the Commission argues that other electric companies have transmission lines or contract rights in the geographic area where SWTC's transmission lines are located, which suggests that the potential for competition exists. SWTC has not responded to this argument. The superior court found that because SWTC served only its members, it did not really compete with these other companies. However, because SWTC can contract to provide service to non-members in some circumstances, it appears that it is at least possible for SWTC to compete with these other companies.

¶ 34 Because SWTC does not claim monopoly rights, does not accept all requests for service and provides service by contracts, weighs in favor of finding that SWTC is not a public service corporation. The remaining factors, however, weigh in favor of finding that it is. In transmitting electricity for ultimate use by consumers, SWTC engages in a service "indispensable to large segments of our population" and is a company "clothed with a public interest." *Sw. Gas,* 169 Ariz. at 286, 818 P.2d at 721. This is no less true because SWTC is one step removed from providing electricity to the consumer directly; SWTC provides and transmits a commodity in which the public has a vital interest.

¶ 35 SWTC argues that concluding that it is a public service corporation ignores *Southwest Gas,* which SWTC contends is controlling precedent directly on point. In *Southwest Gas,* the court considered whether the El Paso Natural Gas Company (El Paso) was a public service corporation. 169 Ariz. at 280–81, 818 P.2d at 715–16. El Paso engaged in transporting natural gas in interstate commerce and selling it to nine Arizona companies and the Salt River Project Agricultural Improvement and Power District (District). *Id.* Those companies and the District then used the natural gas for their own consumption, transported it in interstate commerce on behalf of or for delivery to twenty-two companies and governmental entities and sold it for export to Mexico. *Id.* at 282, 818 P.2d at 717. The court concluded that El Paso was not a public service corporation. *Id.* at 288, 818 P.2d at 723.

¶ 36 SWTC argues that it is the "alter ego" of El Paso, particularly with regard to El Paso's transporting gas for resale. SWTC asserts because the court found that El Paso was not a public service corporation, we must likewise conclude that SWTC also is not. *Southwest Gas,* however, is not controlling.

**434**

¶ 37 In *Southwest Gas,* only El Paso's sale of natural gas for direct consumption was not directly regulated by federal law. *Id.* at 282, 818 P.2d at 717. El Paso's transportation of natural gas and sales for resale, which SWTC asserts is most analogous to its circumstances, were subject to FERC's exclusive jurisdiction. *Id.* Consequently, the Commission and the court did not consider those activities in deciding El Paso's status. The Commission and the court considered only El Paso's direct sales of gas in Arizona. *Id.* In concluding that El Paso was not a public service corporation, the *Southwest Gas* court noted that El Paso had contractual relationships with only ten direct consumers of natural gas in Arizona, actually sold gas to only three and had no intention of adding any new direct sales customers in the state. *Id.* at 287, 818 P.2d at 722.

¶ 38 SWTC's transmission for resale is not similarly regulated so as to exclude the Commission from asserting jurisdiction as in *Southwest Gas.* Although FERC has some jurisdiction over SWTC as a transmitting utility, it does not directly regulate the company because SWTC has an RUS mortgage. SWTC is subject to various regulations that RUS imposes on those having RUS mortgages. RUS, however, recognizes state rate-making authority; it is only when the rates are not subject to state regulation that a company with an RUS mortgage must obtain rate approval from RUS. The Commission may, therefore, assert jurisdiction over SWTC as a public service corporation.

**CONCLUSION**

¶ 39 Because we conclude that SWTC is a public service corporation subject to the jurisdiction of the Arizona Corporation Commission, the superior court's decision is affirmed.

CONCURRING: DONN KESSLER, Presiding Judge and JOHN C. GEMMILL, Judge.

