459 P.2d 86

**Roy BOYES, Appellant,**
v.
**The STATE of Arizona et al., Appellees.**
**No. 9580–PR.**

Supreme Court of Arizona.
In Banc.
Sept. 29, 1969.
Rehearing Denied Oct. 28, 1969.

Stevenson, Warden & Smith by William W. Stevenson and Jerry L. Smith, Flagstaff, for appellant.

Gary K. Nelson, Atty. Gen., Walter O. Holm, Special Asst. Atty. Gen., Phoenix, for appellee.

Minne & Sorenson by Richard Minne, Phoenix, for appellees Arizona Corp. Commission, and others.

HAYS, Justice.

This case is before us upon a petition for review of a decision of the Court of Appeals, (8 Ariz.App. 304, 445 P.2d 861) reversing the judgment of the Superior Court of Maricopa County, entered against the plaintiff, Boyes. The decision of the Court of Appeals is vacated.

Roy Boyes, plaintiff below, initiated this action in the Superior Court (a) to recover certain taxes paid under protest to the Motor Vehicle Superintendent of the Arizona Highway Department; (b) for declaratory judgment that he was at all times therein a private carrier within the meaning of that term as defined by A.R.S. § 40–601, subsec. A, par. 8, and therefore not taxable under A.R.S. § 40–641, and (c) for declaratory judgment that the provisions of Title 40, Articles 1 and 2, Chapter 3, are not applicable to said plaintiff except those provisions applying to a private carrier.

Between June 9, 1962 and August 1, 1963, Boyes was engaged in the business of "pulpwood harvesting" pursuant to written contracts with Southwest Forest Industries, hereinafter referred to as Southwest. The essential terms of the contracts provided that Boyes, having been designated a specific area of forest covered by his contract, would fell those trees selected for harvesting, remove the limbs therefrom, cut the same into specified lengths, and deliver them to Southwest's woodyard, (a collecting point) approximately 12 miles from the harvesting area. As a part of, and incidental to, the performance of those services, Boyes was obligated to collect and stack brush, build trails or roads in some instances, close them out when requested, and to fight fires that might be the result of the negligence of his crew. Plaintiff was paid for the services or work as specified by the contract on a unit price basis of $11.00 per cord "delivered" to the woodyard at Williams, Arizona.

During the summer of 1963, Boyes' operation was audited by the Motor Vehicle Division of the Arizona Highway Department and a license tax was assessed pursuant to A.R.S. § 40–641 based on the determination that the transportation of the pulpwood from the forest to the woodyard constituted contract carriage over the public highways of Arizona for compensation. The assessment order was challenged and the tax assessed was paid under protest.

During this same period, the Arizona Corporation Commission filed a criminal complaint against Boyes alleging his operation as a contract carrier for compensation on the highways of Arizona without having first obtained the permit required for all contract carriers, A.R.S. § 40–608. The matter of State v. Boyes never having come on for trial as to the merits, Boyes amended his original petition and prayed for declaratory judgment on the issue of whether he was a private or contract carrier within the meaning of the statute requiring the application for a permit.

The trial court made certain findings of fact and conclusions of law that held Roy Boyes to be contract carrier. The issue then is, does the evidence support the find-

ings of fact upon which the conclusions of law are based, and are the conclusions of law valid?

The trial court, as the finder of fact in this case, found:

"6. That the plaintiff was engaged in the harvesting and hauling of pulpwood during 1962 and 1963. * *

7. The plaintiff was engaged in the *transportation* by *motor vehicle* of *property* for *compensation on the highway.*

10. That the primary business of the plaintiff was harvesting and transporting pulpwood from the forest to the yards of Southwest Forest Industries, Inc., * * *." (Emphasis added).

We find sufficient evidence in the record to sustain these findings of fact.

According to the testimony, this industry involves the performance of the several operations generally enumerated above. Boyes takes the position that each of these steps in the process of getting standing timber from the forest to the central railhead or collecting point is a necessary and inseparable procedure which when taken together and viewed as a whole constitutes "pulpwood harvesting." Boyes introduced at time of trial, expert testimony to the effect that this procedure is now considered to be the standard procedure in the pulpwood industry. There was testimony that the most economical system for the harvesting of pulpwood is for the pulpwood mill to let a prime contract covering a specific stand of timber and specifying in the contract that the agreement includes the cutting of the timber and its delivery to a collection point.

Therefore, as a prime contractor with Southwest, Roy Boyes contracted for the cutting of the trees *and* for the hauling of said trees to the point of destination. Payment was specified to be made on delivery and failure of delivery would constitute a failure of performance and a major breach of the contract.

The record supports the trial court in its findings that Boyes is engaged in the transportation of pulpwood *for compensation.* There can be no question that some portion of the per cord rate is in fact related to the haul and that the per cord rate is established with the cost factor taken into consideration. See Brown v. Blanton, 297 Ky. 389, 180 S.W.2d 288 (1944), a suit involving a statute and a factual situation almost identical to the instant case, in which that court stated:

"It is insisted that the appellant was not a contract carrier because his contracts only required him to deliver the lumber at a particular place, no particular method of transportation being specified and, consequently, he could deliver the lumber by any form of transportation he chose. We see little merit in this argument since he was actually paid under his contract for motor transportation of the lumber over the highways of this state. Next, it is pointed out that no special compensation for transportation was stipulated in the contract. This we regard as immaterial, since 15% to 20% of the contract price was actually for transportation, whether stipulated or not. We do not regard it as essential, to bring one under the statute, that a specific price or consideration for the transportation be stipulated or agreed upon." 180 S.W.2d at p. 290.

Having ruled that the finding of fact that Boyes is engaged in the business of cutting and hauling pulpwood for compensation, is supported by sufficient evidence, we turn to the question of whether he is a contract carrier or a private carrier. The pertinent section dealing with the definition of what constitutes a private motor carrier is A.R.S. § 40–601, subsec. A, par. 8. One would ordinarily start with the definition of "common carrier of property." But here there is no contention made by the State that Boyes is a common carrier and therefore we need not concern ourselves with the distinction between common carrier and contract carrier. Nor need we be concerned with any problems pertaining

to regulated monopoly. See Visco v. State ex rel. Pickrell, 95 Ariz. 154, 388 P.2d 155 (1963). We therefore begin with the assumption that he is either contract or private.

For classification as a contract carrier there are five distinct elements, all of which must be present for the carrier to be classified as such. The presence of the five essential elements is determined by inquiry as to whether the carrier (1) is engaged in the transportation by *motor vehicle;* (2) of *property;* (3) for *compensation;* (4) on any *public highway;* (5) *and not included in the term common carrier of property.* See A.R.S. § 40–601, subsec. A, par. 5.

■ In the instant case, Boyes' hauling of the pulpwood from forest to collection points satisfies each of the necessary elements. A reading of the statute in its entirety, leads to the conclusion that there is a presumption that a carrier is a contract rather than a private carrier when there is a prima facie showing of such status by meeting the above enumerated standards.

Plaintiff however asserts that he is a private carrier by special definition. We think it is important at this point to set forth the entire definition of "private carrier" as stated in A.R.S. § 40–601, subsec. A, par. 8:

" 'Private motor carrier' means any person not included in the term 'common carrier' or 'contract motor carrier' who transports by any motor vehicle in excess of six thousand pounds unladen weight property of which such person is the owner, lessee or bailee, when such transportation is for the purpose of sale, lease, rent or bailment, or in the furtherance of any commercial enterprise, *but ownership of the property transported shall not be accepted as sufficient proof of a private motor carrier operation if the carrier is in fact engaged in the transportation of property for hire, compensation or remuneration, or if such transportation operations are conducted for profit and not merely as an incident to a commercial enterprise,* provided that \* \* \*." (what follows is a specific statutory exception which has no application to the instant case). (Emphasis added).

■ It is essential to point out that this definition of private motor carrier in the statute is not an all inclusive definition. This section is a statutory carve-out, drafted specifically to enlarge the definition of private motor carrier in certain well defined and carefully chosen cases. These specific cases are meant to be exceptions to the general rule of what would otherwise be common or contract carriers.

■ Our reading of this definition leads us to the conclusion that there are two basic elements to this enlarged private carrier status. (1) He must be the *owner, lessee,* or *bailee* of the property transported, and (2) said transportation must be for the purpose of either *sale, lease, rent, bailment* or the *furtherance of any commercial enterprise.* It has never been urged that Boyes was either the owner or lessee of the pulpwood hauled, or that the haul was for the purpose of sale, lease, or rental of the property. The question is whether Boyes was a bailee of said timber with the purpose of such transportation being either that of bailment or the furtherance of a commercial enterprise.

Clearly, the plaintiff was a bailee under any definition and authority need not be cited for this proposition. We hold however, that the purpose of the transportation was not, "for the purpose of bailment." Viewed otherwise, all transporters of goods of another, being in the strictest sense "bailees," would qualify as private carriers and the common and contract carrier sections would have no validity. To illustrate our point, assume the case of a warehouseman engaged in the business of storing and warehousing goods. In the terms of this statute, if he picks up some of the goods to be stored, that incidental transportation is not for the strict purpose of shipping the goods, but is viewed by us

as being for the purpose of the storage. It is the storage that is the bailment referred to in the definition.

Therefore for the plaintiff to fall within the statute he must be transporting in the *furtherance of some other commercial enterprise.* This Court has stated in the case of Killingsworth v. Morrow, 83 Ariz. 23, 26, 315 P.2d 873, that, "Transportation in furtherance of some other commercial enterprise is nothing more nor less than transportation for the purpose of assisting, promoting or advancing the carrying on of such other business."

Plaintiff contends that he is essentially in the business of cutting trees and that the transportation to a designated collection yard is necessary to the furtherance of that enterprise. The state argues vigorously that Mr. Boyes is in the business of hauling trees as surely as he is in the business of cutting and de-limbing them and that this is a fundamental function of his operation for which he is being compensated. This Court agrees with the state's position.

At this stage in the analysis of this case, the caveat clause of the definition section must be considered. That qualifying clause tells us, that the fact that the carrier is a bailee transporting goods in the furtherance of any commercial enterprise is not necessarily controlling if the carrier is, *"in fact* transporting for hire, *compensation,* or remuneration or if the operation is conducted for profit and *not merely an incident to a commercial enterprise."*

We have discussed this point fully above and only here reiterate our position. A close reading of the record supports the trial court's finding of fact that Roy Boyes was *in fact transporting for compensation;* hence, Boyes is excluded from the special carve-out definition of private carrier.

The result is the same when the question is approached from the other direction. That is, whether the transportation is more or less than a mere incident to the principal commercial enterprise.

The trial court's finding of fact number 10 states:

"10. That the primary business of the plaintiff was harvesting and transporting pulpwood from the forest to the yards of Southwest Forest Industries, Inc., and the transportation portion of such business was not a mere incident thereto, but was a substantial part thereof from which the plaintiff earned a profit."

There is ample evidence in the record that the transportation is significantly more than a mere incident to the cutting. We again refer to the case of Brown v. Blanton, supra. In replying to precisely this argument the court therein stated:

"It is also insisted that the appellant was not a contract carrier because he was not 'primarily engaged in transporting property for hire' and the statute imposes the tax only on contract carriers thus engaged. We think, however, he was 'primarily engaged in transporting property for hire' within the meaning of the statute. The transportation of the lumber was a substantial part of his business, as substantial and important as the logging or sawing end—the transportation branch of the business was not a mere incident (although so alleged as a conclusion) and the appellant was as primarily engaged in transportation as he was in the other features of his business. It is not to be thought that by combining a transportation business with another industry one may escape the tax imposed on transportation for hire." 180 S.W. 2d at p. 290.

This court has held in a variety of differing fact situations that, under the facts as presented in those cases, the operations of the carrier involved, were neither contract nor common, but rather were private carriers. This conclusion was reached on the rationale that the transportation was a mere incident to some primary endeavor other than cartage. See Arizona Corporation Comm. v. Continental Security Guards, 103 Ariz. 410, 443 P.2d 406; Quick Avi-

ation Co. v. Kleinman, 60 Ariz. 430, 138 P.2d 897; Killingsworth v. Morrow, supra; Williams v. State of Arizona, ex rel. Smith, 2 Ariz.App. 291, 408 P.2d 224. Having reviewed the facts and the holdings in each of the cases previously decided on this common issue, we find that the instant case is distinguishable.

This Court has previously commented on the intent of the legislature with regard to these sections in the case of Campbell v. Commonwealth Plan, Inc., 101 Ariz. 554, 422 P.2d 118. Justice McFarland noted at p. 557 of Ariz. Reports, 422 P.2d, at p. 121, supra:

> "Construing A.R.S. § 40–601 and A.R.S. § 40–641 together, we find the legislative intent of these statutes is to collect revenue for the maintenance of Arizona highways from parties who enter into business arrangements which look directly to the inordinate use of public highways to realize pecuniary benefits (unless this use is merely incidental to other business activities). * * * In cases where the transportation of property by motor vehicle is not incidental to another business activity, and compensation is received for this inordinate use of the public highways, owner-operators are charged a license tax under A.R.S. § 40–641, because the primary business function involves a business arrangement looking toward a direct pecuniary gain from the inordinate use of the public highway."

From the record of the testimony taken at the trial of this cause, it is clear that Boyes' use of the highways can be categorized as an "inordinate use * * * to realize pecuniary benefits." The record shows that Boyes generally made an average of 6 round trip hauls to Williams each day. This means that on the average, he was traveling between 150–200 miles a day, of which ½ of the mileage was logged with a full and heavy load. From this

standpoint, it is in the public interest that such an owner or operator who looks to the highways as a source of livelihood contribute his share to their maintenance. In so ruling, we are not advancing any test based upon mileage driven or percentage of man hours or labor devoted to a particular phase of an enterprise.

In addition, we find it to be in the public interest to require such an operator as Boyes to comply with the regulations of the Corporation Commission which pertain to a contract motor carrier.

While this Court concurs in the findings of fact made by the trial court and we hold that said findings are supported by substantial evidence in the record, we are of the opinion that there is sufficient testimony in the record to cast serious doubts as to the accuracy of the Commission's accounting methods in its evaluation of the records of both Boyes and Southwest. This analysis was used in arriving at a figure to represent the taxable portion of the taxpayer's gross receipts. The audit evaluation as approved by the trial court, gave Boyes no credit for profit derived from the cutting portion of his operation. Just because he sub-contracted the cutting portion of the operation does not preclude his entitlement to a profit from that work. Nor does the tax assessment formula apportion any of the administrative costs, overhead, or secondary contract costs between the two operations of cutting and hauling.

The decision of the Court of Appeals is vacated; the decision of Superior Court is affirmed in part and reversed in part; and the cause is remanded to the Superior Court for rehearing on the issue of the amount of tax due and payable.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and McFARLAND, JJ., concur.