569 P.2d 824

**PUROLATOR SECURITY, INC., a Texas Corporation, Appellant,**

v.

**Philip THORNEYCROFT, Acting Superintendent, Motor Vehicle Division, Department of Transportation, and the Arizona Corporation Commission, Appellees.**

**No. 12664.**

Supreme Court of Arizona, In Banc.

Sept. 20, 1977.

---

Shimmel, Hill, Bishop & Gruender, P. C., by Richard B. Johnson, Phil B. Hammond, Brice I. Bishop, Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen., John L. Jones, Asst. Atty. Gen., Jon M. Memmott, Former Asst. Atty. Gen., Phoenix, for appellee Philip Thorneycroft.

GORDON, Justice:

This is an appeal from a summary judgment entered in two consolidated cases and from the denial of a motion to vacate said judgment. In Cause No. C–276481, Purolator Security, Inc. (hereinafter Purolator) sought a refund of license taxes paid and to abate taxes allegedly due the Department of Transportation. The action was predicated on a determination by the Arizona Corporation Commission that Purolator was not a common carrier. This determination

was challenged by the Arizona Department of Transportation in Cause No. C–286436. We take jurisdiction pursuant to 17A, A.R.S. Supreme Court Rules, Rule 47(e).

Initially, Purolator petitioned the Arizona Corporation Commission for a hearing on its status as a common carrier. Following presentation of evidence, the Commission ruled that Purolator's activities fell within the purview of *Arizona Corporation Commission v. Continental Security Guards,* 103 Ariz. 410, 443 P.2d 406 (1968); and therefore, it was not a common carrier. The Department of Transportation, having appeared before the Commission, challenged the decision by commencing an action in the Superior Court pursuant to A.R.S. § 40–254.

The evidence presented to the Superior Court included a transcript of the Corporation Commission proceedings, and the Gross Receipts Tax Reports of Purolator. This evidence revealed that Purolator's operations included both an armored car service and a stationary guard service. The armored car service operated 39 vehicles stationed in the major cities of Arizona, while the stationary guard service only operated in Tucson and Phoenix. In attending to its 400 to 600 customers, Purolator's armored cars traveled between 40,000 and 64,000 miles each month. Reported revenues from this service varied monthly from $45,000 to approximately $71,000. The only information in the record concerning the operations of the stationary guard service was for May, 1973, when it generated revenue of $15,000; compared with $64,000 for the armored car service.

Purolator entered into separate contracts with each of its customers. If a customer only required on-premises security, the cost directly corresponded to the number of guards utilized. However, if one required the armored car services, the contract price was calculated on the cost of two guards (minimum security), insurance based on the value of the property, and mileage. Mileage was figured at the rate of one dollar per mile for the first twenty-five miles, 75 cents per mile for the next twenty-five miles, and 60 cents per mile thereafter. In

return for the contract price, a customer's valuables were protected from the time of pick-up until delivery at its destination, by placing them in the custody of a guard, confining them within the armored car, or by temporary storage within Purolator's vault. Based on this, Purolator argues that it is in the business of protection and security rather than being a common carrier.

There being no dispute as to the facts, Purolator moved for summary judgment in both cases. The Superior Court granted judgment in favor of the Department of Transportation, finding "the activities of Purolator Security, Inc., do not bring them within the exemption of a private carrier as stated * * * in *Arizona Corporation Commission v. Continental Security Guards,*" *supra.*

Before considering the tax issues raised in this appeal, it is necessary to consider two preliminary issues:

(1) Whether the Department of Transportation had standing to challenge the decision of the Corporation Commission; and

(2) Whether Purolator is, as a matter of law, a common, contract, or private carrier.

### *Standing of the Department of Transportation*

A.R.S. § 40–254(A) provides, *inter alia*:

"Any party in interest, or the attorney general on behalf of the state, being dissatisfied with any order or decision of the commission, may * * * commence an action in the superior court * * * against the commission as defendant, to vacate and set aside such order or decision * * *."

It cannot be questioned that the decision of the Corporation Commission directly affected the revenues available to the Department of Transportation for highway maintenance. *See* A.R.S. § 40–641. Additionally, this Court has noted the legislative intent of A.R.S. § 40–601 and A.R.S. § 40–641 "to collect revenue for the maintenance of Arizona highways from parties who enter into business arrangements which look di-

rectly to the inordinate use of public highways to realize pecuniary benefits (unless this use is merely incidental to other business activities) * * *." *Campbell v. Commonwealth Plan, Inc.*, 101 Ariz. 554, 557, 422 P.2d 118, 121 (1966); *Boyes v. State*, 105 Ariz. 34, 459 P.2d 86 (1969). Since the Legislature empowered the Superintendent of the Department of Transportation to carry out its intent, *see* A.R.S. §§ 40–658, 40–659, it would be incongruous to hold that the Department of Transportation was not a party in interest. *See also*, 16 A.R.S. Arizona Rules of Civil Procedure, Rule 19(a).

### Supreme Court Review

▮ When an action is based on the authority of A.R.S. § 40–254, the Superior Court acts *de novo*. In such a proceeding, the Court "had the right to form its own judgment as an independent tribunal as to the conclusion to be drawn from the evidence, subject only to the rule laid down * * *, that the burden of proof is on the plaintiff to show by clear and satisfactory evidence that the order of the commission is unreasonable or unlawful." *Corporation Commission v. Peoples Freight Line, Inc.*, 41 Ariz. 158, 160–161, 16 P.2d 420, 421 (1932); *Arizona Corporation Commission v. Reliable Transportation Co.*, 86 Ariz. 363, 346 P.2d 1091 (1959). The test, however, to be applied by this Court is whether there is substantial evidence in the record to support the order of the superior court setting aside the finding of the Corporation Commission. *Arizona Corporation Commission v. Reliable Transportation Co., supra; Corporation Commission v. People's Freight Line, Inc., supra.*

### Status of Purolator

▮ A.R.S. § 40–601(A)(5) defines a common motor carrier of property as "any person engaged in the transportation on any public highway by motor vehicle of property for compensation as a common carrier."

As the statute fails to further define "common carrier", this Court has applied a common law standard:

"(1) He must be engaged in the business of carrying goods for others as a public employment, and must hold himself out as ready to engage in the transportation of goods for persons generally as a business, and not as a casual occupation. (2) He must undertake to carry goods of the kind to which his business is confined. (3) He must undertake to carry by the methods by which his business is conducted, and over his established roads. (4) The transportation must be for hire." *Claypool v. Lightning Delivery Co.*, 38 Ariz. 262, 266, 299 P. 126, 127–28 (1931); *Arizona Corp. Commission v. Reliable Transportation Co.*, 86 Ariz. at 375, 346 P.2d at 1099.

The first element of this test is critical. Although Purolator argues that it is in the business of protection and security rather than carriage of goods for others, the record indicates that Purolator transported property of its customers on a regular basis. This monthly movement of property over a minimum of 40,000 miles of Arizona highways is indicative of the nature of Purolator's business—transportation of property, albeit secure transportation. Similarly, the record supports a finding of Purolator's holding itself out as "ready to engage in the transportation of goods for persons generally as a business."

"The concept of 'holding out' cannot be limited, however, merely to traditional soliciting or advertising for the reason that the legislative controls are designed to cover not the methods utilized by the carrier to acquire business but rather its *participation in the field in which it operates*. The choice in the first instance belongs to the particular motor carrier. No carrier is forced to become a common carrier, but when it holds itself out to serve the public generally *or when it in fact does so*, it subjects itself to regulation. The concept of 'the public' in this area includes those persons or companies which require or may require the particular type of service furnished by the motor carrier." (Emphasis added.) *Arizona*

*Corporation Commission v. Reliable Transportation,* 86 Ariz. at 377, 346 P.2d at 1100.

The only instance in the record where Purolator refused service to a customer was based on that customer's refusal to pay the cost of the service. Except for this isolated incident, there is nothing in the record to indicate that Purolator reserved the right to refuse business, so long as the business was legal and the property to be carried was of the kind to which its business was confined. These facts distinguish the case *sub judice* from that of *Continental Security Guards, supra.* In *Continental,* it was found that:

> "[*Continental*] does not hold itself out as willing to haul for all potential customers without discrimination. It openly reserves the right to refuse to carry for any applicant even when it has equipment available." 103 Ariz. at 419, 443 P.2d at 415.

Merely because Purolator entered into separate contracts with each customer does not alter the foregoing facts, nor does it change the character of Purolator's business. *Arizona Corporation Commission v. Reliable Transportation, supra.*

The record here also contrasts with *Brink's Express Company v. Public Service Commission,* 117 Pa.Super. 268, 178 A. 346 (1935), a cornerstone of the *Continental* decision. In *Brinks* "the charge for the work [was] not dependent upon the distance traveled, the time consumed, nor alone upon the value of the articles carried." 178 A. at 348; *Continental,* 103 Ariz. at 419, 443 P.2d at 415. Whereas here, these are the very factors used by Purolator as the basis for its charges.

Although it is not necessary for a common carrier to operate between fixed termini, nor upon regular schedules, *Reliable Transportation, supra,* the record does show that Purolator operated along established routes. The transportation furnished was, without question, for hire. Thus, the four-part test of a common carrier is met by the record of Purolator's armored car activities.

In a case such as this, where all of a business's activities are not of a carrier nature, it must also be determined "whether the use of the highway is of such a nature that it is not a part of the other business, and for that reason, the public interest requires that it be regulated as a common carrier." *Continental,* 103 Ariz. at 420, 443 P.2d at 416. Continental Security Guards operated five divisions: training and placement, polygraph, investigation, security, and an armored car service with one armored car (which accounted for five percent of Continental's gross revenue). Purolator, on the other hand, had but two divisions with its armored car service accounting for approximately 80 per cent of its total revenue. We still "are not advancing any test based upon mileage driven or percentage of man hours or labor devoted to a particular phase of an enterprise". *Boyes v. State,* 105 Ariz. at 39, 459 P.2d at 91. Nor may "a determination of the type of business * * * be based solely on the percentage of receipts" attributable to a phase of its operations. *Continental,* 103 Ariz. at 415, 443 P.2d at 411. However, these facts are relevant in determining "whether the transportation is more or less than a mere incident to the principal commercial enterprise." *Boyes,* 105 Ariz. at 38, 459 P.2d at 90.

> "So in this, as in any other similar case, it is the general conduct of the actual business, and not isolated acts or statements, public or private, which fix the character of a common carrier on a party. And no form of subterfuge or evasion will prevent the courts from going behind the form to the substance." *Claypool v. Lightning Delivery Co.,* 38 Ariz. at 267, 299 P. at 128.

Applying the *Continental* standard to the record, it becomes clear that Purolator is a common carrier which offers security as a part of its carriage service, not vice-versa. As such, Purolator's activities stand in contrast with the incidental use of an armored car in Continental's security operations.

The foregoing discussion demonstrates the substantial evidence in the record which satisfies the test set forth in *Claypool*

*Lightning Delivery Co., supra,* rather than establishing the narrow exception in *Arizona Corporation Commission v. Continental Security Guards, supra.* Because of our disposition of this issue, we need not consider the tax refund issues which were also raised on appeal.

Judgment of the superior court affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS, J., concur.

HOLOHAN, Justice, specially concurring:

The judgment of the Superior Court found that the appellant Purolator Security Inc. was not a private carrier exempt from the tax on motor carriers. I agree with this holding because the activities of Purolator are those of a contract motor carrier. Contract motor carriers and common motor carriers are both subject to the tax on motor carriers. A.R.S. § 40–641. I concur in the affirmance of the judgment for the foregoing reason.