818 P.2d 714

**SOUTHWEST GAS CORPORATION,**
**Plaintiff–Appellant,**

v.

**ARIZONA CORPORATION**
**COMMISSION, Defendant–**
**Appellee,**

**Apache Power Company, Arizona Public Service Company, Phelps Dodge Corporation, Salt River Project Agricultural Improvement and Power District El Paso Natural Gas Company, Asarco, Inc., Inspiration Consolidated Copper, and Magma Copper Company, Intervernors–Appellees.**

No. 1 CA–CV 89–081.

Court of Appeals of Arizona,
Division 1, Department D.

Oct. 1, 1991.

Andrew W. Bettwy, Phoenix, for appellant.

Arizona Corp. Com'n, Legal Div. by Christopher C. Kempley, Phoenix, for appellee.

Snell & Wilmer by James F. McNulty, Jr., Tucson, for intervenor El Paso Natural Gas.

Apker, Apker, Haggard & Kurtz, P.C. by Burton M. Apker, Phoenix, for intervenors ASARCO, Inc., Inspiration Consol. Copper and Magma Copper Co.

Wilkinson, Barker, Knauer & Quinn by Joel L. Greene, Barbara S. Jost, Washington, D.C., O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Raymond S. Heyman, Phoenix, Co-counsel for intervenors-appellees.

## OPINION

TAYLOR, Judge.

Southwest Gas Corporation (Southwest Gas) filed a complaint with the Arizona Corporation Commission (Commission) against El Paso Natural Gas Company (El Paso), alleging that El Paso was a public service corporation as defined by Article 15, Section 2, of the Arizona Constitution. Southwest Gas requested an order prohibiting El Paso from selling natural gas to end-users in Arizona until it obtained a certificate of public convenience and necessity and an approved rate schedule from

the Commission. El Paso opposed the complaint, and a number of interested corporations were allowed to intervene on its behalf.[1]

The Commission issued its decision on January 28, 1987. It determined that: (1) El Paso's status as an interstate natural gas pipeline company regulated by the Federal Energy Regulatory Commission (FERC) did not preclude the Arizona Corporation Commission from exercising regulatory jurisdiction over El Paso's direct sales of natural gas within Arizona; (2) if El Paso was a public service corporation as defined by Ariz.Const. art. 15, § 2, the Commission would have a mandatory duty to regulate it; and (3) as long as El Paso did not seek new end-use customers in Arizona, its existing end-use sales did not render it a public service corporation within Article 15, Section 2, of the Arizona Constitution. *Southwest Gas Corp. v. El Paso Natural Gas Co.*, No. 55397 (Jan. 28, 1987) (Ariz. Corp. Comm'n Opinion and Order). The Commission stated:

> Our determination herein that El Paso is not *presently* a public service corporation is largely dependent upon the singular fact that El Paso is seeking no new direct sale[s] customers. Should El Paso seek new Certification from FERC for new direct sales customers within Arizona, we would be compelled to exert jurisdiction over El Paso as a public service corporation.

*Id.* at 9.

After exhausting its administrative remedies,[2] Southwest Gas commenced this action in superior court pursuant to Ariz.Rev. Stat.Ann.. [hereinafter A.R.S.] § 40–254(A) (1985).[3] Its complaint challenged the Commission's determination that El Paso was not a "public service corporation" under Ariz.Const. art. 15, § 2, and sought an order modifying or setting aside the Commission's determination as "unreasonable and unlawful." The trial court permitted El Paso and seven of the intervenors before the Commission to intervene in the superior court.[4] The parties submitted the action for determination upon stipulated facts, legal memoranda, and oral arguments. The trial court's ruling adopted the stipulated facts as its findings of fact and held: (1) Southwest Gas had not shown by clear and satisfactory evidence that the Commission's decision was unreasonable or unlawful, and (2) the Commission properly ruled on the facts before it that El Paso was not a public service corporation. The trial court entered formal findings of fact, conclusions of law, and judgment in accordance with the foregoing. Southwest Gas timely appealed. *See* A.R.S. §§ 12–2101(B), 40–254(D).

## FACTS PERTINENT TO THE APPEAL

Southwest Gas is a public service corporation certified by the Commission to sell natural gas in Arizona. In 1985, Southwest Gas's total sales in Arizona were 57,-220,476 million cubic feet (mcf). In the same year, its sales to industrial and electric generation customers in Arizona were 13,123,066 mcf.

El Paso is a Delaware corporation engaged primarily in interstate transmission of natural gas for resale to gas distribution

---

1. Intervenors included Arizona Public Service Company, Salt River Project Agricultural Improvement and Power District, Phelps Dodge Corporation, Apache Power Company, Can–Am Corporation, Inspiration Consolidated Copper Company, Magma Copper Company, and ASARCO, Inc.

2. Southwest Gas applied for a rehearing pursuant to A.R.S. § 40–253, urging the Commission to assert jurisdiction over El Paso's sales of natural gas to end-use customers in Arizona, to issue El Paso a nonexclusive "grandfathered" certificate of public convenience and necessity for its sales to existing end-use customers, and to prohibit El Paso from making any new direct sales to end-users without first obtaining certification of public convenience and necessity. The Commission denied the application.

3. In 1991, the legislature added A.R.S. § 40–254.01, providing that orders of the Commission be appealed directly to the court of appeals in rate-making or rate-design matters involving public service corporations.

4. The intervenors in superior court were Apache Power Company, Arizona Public Service Company, Phelps Dodge Corporation, Salt River Project, ASARCO, Inspiration Consolidated Copper Company, and Magma Copper Company.

companies. El Paso is authorized to conduct business in Arizona as a foreign corporation, but the Commission has never exercised jurisdiction over El Paso as a public service corporation.

El Paso is a "natural-gas company" within the meaning of sections 1 and 2 of the Natural Gas Act, 15 U.S.C. §§ 717–717z (1982), and is subject to the jurisdiction of FERC. El Paso's interstate pipeline system originates in states other than Arizona, extends through Arizona and other states, and terminates at the Arizona–California and Arizona–Nevada borders.

El Paso engages in four separate kinds of transactions in Arizona: (1) transporting natural gas in interstate commerce and selling it to various Arizona cities, towns, companies, and the Navajo Tribal Utility Authority for resale; (2) transporting natural gas in interstate commerce and selling it to nine Arizona companies and the Salt River Project Agricultural Improvement and Power District for their own consumption for industrial or electric generation purposes; (3) transporting natural gas in interstate commerce and selling it for export to Mexico; and (4) transporting natural gas in interstate commerce on behalf of or for delivery to some twenty-two companies and governmental entities. In 1984, El Paso's total system sales were 945,119,-180 mcf, and its Arizona direct sales were 31,350,008 mcf, or 3.3% of total system sales. In 1985, its total system sales were 877,668,383 mcf, and Arizona direct sales were 40,951,462 mcf, or 4.5% of total system sales.

El Paso's transportation of natural gas and its sales of natural gas for resale are subject to the exclusive jurisdiction of FERC under the Natural Gas Act. El Paso's sales of natural gas for export to Mexico are subject to the jurisdiction of the Economic Regulatory Administration under the Natural Gas Act. Only El Paso's sales of natural gas for direct consumption are outside the Natural Gas Act and not directly regulated under federal law.

All of El Paso's current sales of natural gas in Arizona for direct consumption arise out of contractual relationships initiated from 1930 through 1949 with its ten current end-use customers or their predecessors. After Congress adopted the Natural Gas Act in 1938, all of El Paso's end-use sales have been authorized by certificates of public convenience and necessity issued by the Federal Power Commission or its successor, FERC. El Paso may not discontinue service to end-use customers pursuant to validly-issued certificates without FERC permission, but under the Natural Gas Act is otherwise subject to state regulation. At certain times from 1939 through 1978, El Paso also entered into and performed contracts for end-use sales of natural gas within Arizona to four corporations and the City of Safford. None of these contracts are currently in effect.

El Paso has not solicited additional end-use customers in Arizona and has no plans to add any such customers in the future. El Paso has also made no effort to monopolize any group of customers.

STANDARD OF REVIEW ON APPEAL

Southwest Gas characterizes the issue on appeal as follows: "Whether or not, by virtue of its 'direct sales' activities within the State of Arizona, El Paso is a 'public service corporation' within the contemplation of section 2 of article XV of Arizona's constitution." Southwest Gas asserts that at the heart of this issue is a question of law—the meaning and scope of Ariz.Const. art. 15, § 2. Southwest Gas argues that, because there is no dispute over the facts, the standard of review on appeal is "whether or not—as a matter of law—the undisputed facts support the superior court's interpretation of the meaning of the definition of 'public service corporation' in Arizona's constitution."

Relying on statutory interpretation and various Arizona decisions, the Commission and the intervenors contend that the standard of review is whether the superior court's judgment is supported by "reasonable" or "substantial" evidence. We commence our analysis of this issue with a review of constitutional powers.

*Scope of Corporation Commission's Power*

■ The Corporation Commission is given broad authority in Arizona. *State v. Tucson Gas, Elec. Light & Power Co.*, 15 Ariz. 294, 300, 138 P. 781, 783 (1914). No other state's constitution has given its commission the extensive power and jurisdiction that the Arizona Corporation Commission possesses. *Arizona Corp. Comm'n v. Superior Court*, 107 Ariz. 24, 26, 480 P.2d 988, 990 (1971) (citing *Tucson Gas*, 15 Ariz. 294, 138 P. 781 (1914)). Within the sphere of its responsibilities, the Commission is empowered to exercise not only legislative but also judicial, administrative, and executive functions of government. *Tucson Gas*, 15 Ariz. at 306, 138 P. at 786. Under the state constitution, the Commission is granted "full power" to set just and reasonable rates by public service corporations and to "make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State...." Ariz.Const. art 15, § 3. In rate-making decisions affecting public service corporations, the Commission is given full and exclusive powers to the preclusion of interference by the other branches of government. This is subject, however, to judicial review upon appeal. *Ethington v. Wright*, 66 Ariz. 382, 392, 189 P.2d 209, 216 (1948). *See* Comment, *Rate Decisions: Judicial Review of the Arizona Corporation Commission*, 19 Ariz.L.Rev. 488 (1977). The unique and powerful role played in state government by the Corporation Commission has been described by our supreme court as follows:

> While it is not so named, it is, in fact, another department of government, with powers and duties as well defined as any branch of the government, and where it is given exclusive power it is supreme. Its exclusive field may not be invaded by either the courts, the legislative or executive.

*Tucson Gas*, 15 Ariz. at 306, 138 P. at 786.

*The Exercise of Judicial Power*

We next examine the exercise of judicial power by the Commission and the relation of that power to the courts.

As observed by the U.S. Supreme Court, "[i]n the performance of assigned constitutional duties each branch of the Government must initially interpret the Constitution, and the interpretation of its powers by any branch is due great respect from the others." *United States v. Nixon*, 418 U.S. 683, 703, 94 S.Ct. 3090, 3105, 41 L.Ed.2d 1039 (1974); *see also J.W. Hancock Enters. v. Arizona State Registrar of Contractors*, 142 Ariz. 400, 690 P.2d 119 (1984). As stated above, the Commission exercises some judicial or quasi-judicial functions. For instance, in the exercise of its statutorily-derived power to issue or deny a certificate of convenience and necessity, the Commission "performs a judicial function which imposes upon the Commission the duty to hear before it condemns, to proceed upon inquiry, and to render judgment only after trial." *Pacific Greyhound Lines v. Sun Valley Bus Lines*, 70 Ariz. 65, 71, 216 P.2d 404, 409 (1950).

However, in the symmetry of a multi-branched government, there must be one final arbiter of what the constitution says and what the law is. That final power and that final responsibility rests upon the courts. The court in *Nixon* stated this fundamental concept as follows: "Notwithstanding the deference each branch must accord the others, the 'judicial power' ... [is] vested in the ... courts...." *Nixon*, 418 U.S. at 704, 94 S.Ct. at 3105–06. "Many decisions of this Court, however, have unequivocally reaffirmed the holding of *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803), that '[i]t is emphatically the province and duty of the judicial department to say what the law is.'" *Id.* at 703, 94 S.Ct. at 3105 (citing *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)). In the absence of an express and specific grant of power to the Commission to determine as a matter of law who is a public service corporation under the constitution, that final responsibility is vested in the courts. *See* Ariz.Const. art. 6, § 1 ("The judicial power shall be vested in an integrated judicial department...."); 16 C.J.S. *Constitutional Law* § 17 (1984) ("[T]he construction of a constitution is the pecu-

liar province of the courts, and to them belongs the final decision.").

The Commission exercises the judicial powers inherent in its responsibility to make those decisions necessary to regulate public service corporations, pursuant to Article 15, Section 3, of the Arizona Constitution. This includes the determination of whether a particular business is a "public service corporation." This determination involves the following three-step process: (1) the gathering and reception of evidence, (2) the distillation of that evidence into findings of fact, and (3) the application of those facts to the constitutional standard defining public service corporations. In the case at hand, the effect of the parties' stipulation was to eliminate step one and to provide to the court the determinate facts of step two. The Commission then exercised its judicial powers under step three. If the decision of the Commission is not appealed, that judicial determination becomes final.

*Trial Court Proceedings*

Any interested party or the attorney general may appeal to the superior court any order or decision of the Commission. A.R.S. § 40–254(A). The statute further provides: "In all trials, actions and proceedings the burden of proof shall be upon the party adverse to the commission or seeking to vacate or set aside any determination or order of the commission to show by clear and satisfactory evidence that it is unreasonable or unlawful." *Id.* at (E).

The trial in superior court is *de novo.* The trial court receives and weighs the evidence, draws its own inferences from the evidence, and comes to an independent conclusion. This is subject only to the constraint that the burden of proving the invalidity of the Commission's conclusion is on the party adverse to the Commission. *Tucson Elec. Power Co. v. Arizona Corp. Comm'n,* 132 Ariz. 240, 645 P.2d 231 (1982); *Lofersky v. Needel,* 26 Ariz.App. 231, 547 P.2d 502 (1976). The trial court proceedings thus essentially duplicate the three-step process performed by the Commission. *See, e.g., Arizona Corp. Comm'n v. Reliable Transp. Co.,* 86 Ariz. 363, 372,

346 P.2d 1091, 1097 (1959) (superior court made findings of fact which were amply supported by substantial evidence).

*Appellate Review*

Numerous Arizona cases have stated the rule that on appeal from a superior court's *de novo* review of a Commission order, the appellate court will not conduct its own *de novo* review. The appellate court, however, will affirm the judgment if it is supported by any substantial or reasonable evidence. *See, e.g., Purolator Sec., Inc. v. Thorneycroft,* 116 Ariz. 394, 569 P.2d 824 (1977); *Sun City Water Co. v. Arizona Corp. Comm'n,* 113 Ariz. 464, 556 P.2d 1126 (1976). In the rate case *Tucson Electric Power Co. v. Arizona Corporation Commission,* our supreme court stated:

[A]n appellate court reviews the Superior Court's decision and not the Commission's, and the Superior Court's ruling on the Commission's decision will be upheld if supported by reasonable evidence. If the Superior Court has disturbed the Commission's findings, an appellate court will examine the Superior Court's contrary conclusions to see if they are supported by clear and satisfactory evidence.

132 Ariz. at 244, 645 P.2d at 235 (citations omitted). It is in reviewing step two of the process (i.e., the distillation of the evidence into findings of fact) that the "substantial" or "reasonable" evidence standard has application.

Some Arizona decisions reflect the application of the "substantial evidence" standard of review in Commission appeals that have presented pure questions of law. This suggests that the court has merged the weighing of evidence and facts into one step and defined it as "substantial evidence." Such wording may be construed as a finding by the appellate court of sufficient facts to support the legal conclusion of the trial court. *See Purolator Sec., Inc. v. Thorneycroft,* 116 Ariz. 394, 569 P.2d 824 (1977). Other Arizona cases dealing specifically with the status of a "public service corporation" within Ariz.Const. art 15, § 2, appear to have bypassed the sub-

stantial evidence standard of review and resolved the ultimate question as a matter of law. In *Trico Electric Cooperative v. Corporation Commission,* our supreme court stated:

> Trico first asserts that the trial court erred in approving the assumption by the Commission of jurisdiction over Trico (a) because Trico is not a public service corporation and (b) that there is no substantial evidence establishing such jurisdiction. The answer to this is that the Arizona Constitution, Article 15, Section 2, states in clear and concise language that:
>
> > "All corporations other than municipal engaged * * * in furnishing gas, oil, or electricity for light, fuel, or power * * * shall be deemed public service corporations."
>
> ... We held the Commission had jurisdiction over Cooperatives in *Natural Gas Service Co. v. Serv–Yu–Cooperative,* 69 Ariz. 328, 213 P.2d 677, 70 Ariz. 235, 219 P.2d 324. However we do not rely entirely upon the reasons set forth in that case for our conclusion in this case. The language of the Constitution is too clear to admit of any other interpretation than that reached under the facts of this case. No further evidence is required to determine that issue than that offered by Trico. The allegations in the complaint and evidence offered in support thereof adequately establish that Trico is a *public service corporation* engaged in furnishing * * * electricity for light, fuel or power....

86 Ariz. 27, 33–34, 339 P.2d 1046, 1050–51 (1959).

In *Petrolane–Arizona Gas Service v. Arizona Corporation Commission,* 119 Ariz. 257, 580 P.2d 718 (1978), the courts were asked to determine if a number of companies, each distributing metered liquified petroleum gas to residential and commercial customers, were public service corporations subject to regulation by the Corporation Commission. As in the case at hand, the matter had been submitted to the superior court upon an agreed statement of facts. On appeal, the supreme court never discussed "substantial evidence" in its review of the trial court's finding that the companies were public service corporations. Rather, in affirming the trial court, the supreme court proceeded directly to a resolution of the issue as a matter of law. Thus, it would appear that where the matter at issue is submitted upon stipulated facts, there is no evidence to quantify, only facts to measure against a constitutional standard.

■ From our analysis of the respective powers granted by the constitution to the Commission and to the courts, and as a practical matter, it appears to us that the question whether a given business enterprise constitutes a public service corporation subject to the Commission's regulatory jurisdiction is ultimately a question of law. The "substantial evidence" standard of review sensibly can be applied only to step two of the process (i.e., to an evaluation of findings of fact based upon conflicting or disputed evidence). Here, the facts before the superior court were without dispute. Under those circumstances, the only issue before the trial court was one of law. The court was required only to measure the stipulated facts against the constitutional provisions and case law defining public service corporations. The only conceivable "burden" on Southwest Gas, pursuant to A.R.S. § 40–254(E), was to persuade the trial court that its view of how the law was to apply to the facts was the better reasoned. We approach the issue on appeal in the same way.

### IS EL PASO A PUBLIC SERVICE CORPORATION?

Article 15, Section 3, of the Arizona Constitution confers upon the Arizona Corporation Commission broad regulatory power over "public service corporations within the state for service rendered therein...."

■ A corporation falling within the definition of "public service corporation" is subject to the jurisdiction of the Arizona Corporation Commission. *General Alarm, Inc. v. Underdown,* 76 Ariz. 235, 238, 262 P.2d 671, 672 (1953); A.R.S. § 40–202 (1985). Article 15, Section 2, of the Ari-

zona Constitution defines a "public service corporation" as follows: "All corporations other than municipal engaged in furnishing gas, oil, or electricity for light, fuel, or power * * * shall be deemed public service corporations."

■ Although *Trico Electric Cooperative v. Corporation Commission*, 86 Ariz. 27, 339 P.2d 1046 (1959), applied this definition literally, our supreme court has held more recently that meeting the literal textual definition is insufficient. In *Arizona Corporation Commission v. Nicholson*, the supreme court stated:

"To be a public service corporation, its business and activity must be such as to make its rates, charges, and methods of operations a matter of public concern. It must be, as the courts express it, clothed with a public interest to the extent clearly contemplated by the law which subjects it to governmental control. Free enterprise and competition is the general rule. Governmental control and legalized monopolies are the exception and are authorized under our constitution only for that class of business that might be characterized as a public service enterprise. The theory is that the right to public regulation and protection outweighs the customary right of competition. If the public contact with a business is such that its necessities and convenience can be better served through governmental supervision and controlled monopoly, thereby eliminating customary competition, the state may exercise its police power to that end. *Such invasion of private right cannot be allowed by implication or strained construction. It was never contemplated that the definition of public service corporations as defined by our constitution be so elastic as to fan out and include businesses in which the public might be incidentally interested * * *.*"

108 Ariz. 317, 321, 497 P.2d 815, 819 (1972) (quoting *General Alarm v. Underdown*, 76 Ariz. 235, 238, 262 P.2d 671, 672–73 (1953)).

In *Petrolane–Arizona Gas Service v. Arizona Corporation Commission*, the supreme court discussed the purposes of exercising governmental regulatory power over public service corporations:

The statement of the court in *Re Geldbach Petroleum Co.*, 56 P.U.R.3d 207 (Mo.1964), accurately conveys the benign objectives of the Constitution, Art. 15, § 2, and why its language should not be reduced by judicial constructions to insignificance:

"* * * *the purposes of regulation are to preserve and promote those services which are indispensable to large segments of our population,* and to prevent excessive and discriminatory rates and inferior service *where the nature of the facilities used in providing the service and the disparity in the relative bargaining power of a utility ratepayer are such as to prevent the ratepayer from demanding a high level of service at a fair price without the assistance of governmental intervention in his behalf.*" *Id.* at 213.

119 Ariz. 257, 259, 580 P.2d 718, 720 (1978) (emphasis added).

In identifying those corporations "clothed with a public interest" and subject to regulation because they are "indispensable to large segments of our population," Arizona courts have often focused on the following factors set forth in *Natural Gas Service Co. v. Serv–Yu Cooperative:*

(1) What the corporation actually does.

(2) A dedication to public use.

(3) Articles of incorporation, authorization, and purposes.

(4) Dealing with the service of a commodity in which the public has been generally held to have an interest.

(5) Monopolizing or intending to monopolize the territory with a public service commodity.

(6) Acceptance of substantially all requests for service.

(7) Service under contracts and reserving the right to discriminate is not always controlling.

(8) Actual or potential competition with other corporations whose business is clothed with public interest.

70 Ariz. 235, 237–38, 219 P.2d 324, 325–36 (1956) (citations omitted). These eight factors are merely guides for analysis and they need not all be found to exist before the company in question may be deemed a public service corporation. *See Petrolane–Arizona Gas Serv. v. Arizona Corp. Comm'n,* 119 Ariz. at 259, 580 P.2d at 720.

Contrary to Southwest Gas's argument, El Paso's end-use sales activities in Arizona do not render it subject to Commission jurisdiction on the basis of the *Serv-Yu* criteria. El Paso functions primarily as an interstate transmitter of natural gas whose operations are almost entirely regulated by federal government agencies. It has long-standing contractual relationships with only ten direct consumers of natural gas in Arizona and currently sells gas to only three of these end-users. El Paso deals in natural gas, a commodity in which the public generally holds an interest. However, its small static number of Arizona direct sales customers, representing only three to five percent of its total sales, clearly indicates that El Paso has not dedicated its property to public use.

El Paso is not presently monopolizing and has no future plans to monopolize gas sales in Arizona, nor does El Paso accept "substantially all requests for service." El Paso has accepted no new direct-sale customers since 1949. Further, the Commission found that El Paso does not intend to add any new direct sales customers in Arizona.

Southwest Gas relies primarily on two arguments for its contention that El Paso should be classified as a public service corporation. First, it urges that El Paso's sales have significant impact on the public because in 1985 El Paso had seventy-five percent of the Arizona market in direct sales to industrial and electric generating customers. It argues that El Paso's large volume of natural gas sales to its end-use customers effectively displaces comparable sales by local public service corporations and results in increased fixed costs being apportioned among the captive customers of regulated companies. The deficiency in this argument is that the record does not contain the facts necessary to support this assertion. It is reasonable to assume that serving additional customers would increase local natural gas companies' gross revenues. However, it would almost certainly increase fixed costs as well, especially if capital investment for new transmission systems were necessary to facilitate the increased gross receipts. We decline to speculate as to the existence of these facts under the guise of taking judicial notice.

Similarly, we cannot conclude merely from the identities of El Paso's ten end-use customers that El Paso's sales to them "skim the cream of the natural gas market." No evidence in the record before us supports this characterization.

We are not persuaded by Southwest Gas's argument that El Paso's end-use sales place it in actual or potential competition with locally regulated natural gas companies. There is no evidence in the record that any such companies, including Southwest Gas, are presently able to serve El Paso's end-use customers. Moreover, as we noted before, El Paso has consistently disclaimed any intention to add new end-use customers. Unless that fact changes, there is no potential competition between El Paso and local natural gas companies.[5] Southwest Gas's reliance on *Serv-Yu* and *Industrial Gas Co. v. Public Utilities Commission,* 135 Ohio St. 408, 21 N.E.2d 166 (1939), on this point is misplaced. The companies in question in both those cases

---

5. Because the Commission has stated it would regulate El Paso as a public service corporation in the future if it added new direct sale customers in Arizona, Southwest Gas asserts that the Commission has adopted an "almost pregnant" posture. We cannot agree. Southwest Gas's characterization invalidly assumes that either El Paso is or isn't a public service corporation under all conceivable facts. In reality, a compa- ny's status as a public service corporation depends in part on the nature and characteristics of its business—"what the corporation actually does" in the words of *Serv-Yu.* The fact that El Paso might constitute a public service corporation at some point in the future if it changed its mode of operation does not mean it must necessarily constitute a public service corporation under the circumstances as they now exist.

actively competed with existing public service corporations.

Finally, we reject Southwest Gas's implicit contention that the superior court's judgment was tainted by the Commission's favorable citation of *Public Utilities Commission v. Colorado Interstate Gas Co.,* 142 Colo. 361, 351 P.2d 241 (1960). In *Arizona Corporation Commission v. Nicholson,* our supreme court rejected the "rigid" position taken by *Colorado Interstate Gas Co.* that a company could not constitute a public service corporation unless all members of the public have an enforceable right to demand its service. 108 Ariz. 317, 319–20, 497 P.2d 815, 817–18 (1972). We agree with the Commission that its decision did not rely on *Colorado Interstate Gas Co.* for the narrow principle stated above. Instead, the Commission relied upon *Colorado Interstate Gas Co.* for the related proposition that El Paso's providing natural gas under a limited number of end-use contracts did not amount to a dedication of its property to public use.

Based upon the record before us, we find no error in the conclusion of the superior court. The Commission correctly determined that El Paso was not a public service corporation within the provisions of Article 15, Section 2, of the Arizona Constitution.

The judgment of the superior court is affirmed.

BROOKS, P.J., and FIDEL, J., concur.